[No. 12183.  Department Two.  November 27, 1914.]

THE STATE OF WASHINGTON, *Respondent*, v. GUS SHUTZLER, *Appellant*.[1]

CRIMINAL LAW—TRIAL — PRESENCE OF ACCUSED — CONSTITUTIONAL RIGHTS. It is error, conclusively presumed to be prejudicial, as denying the constitutional right of an accused to appear and defend in person (Const., art. 1, § 22) and his statutory right (Rem. & Bal. Code, § 2145) to be personally present during the trial, for the court, upon receiving a jury during Sunday for the supposed purpose of discharging it for inability to agree, to send the jurors back for further deliberation with general instructions as to their duty to arrive at a verdict if possible; neither the defendant, who was out on bail, but within easy call, nor his attorneys, being present or notified.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered April 10, 1914, upon a trial and conviction of grand larceny. Reversed.

*P. L. Pendleton* and *G. J. Langford* (*Browder D. Brown*, of counsel), for appellant.

*Lorenzo Dow* and *W. D. Askren*, for. respondent.

FULLERTON, J.—Gus Shutzler was convicted of grand larceny, and appeals from the judgment and sentence pronounced upon him. He assigns as error that the trial court, on a legal holiday, in the absence of and without notice to himself or his attorneys, after the jury had been sent out to deliberate on their verdict, called them into the court room and gave them certain additional instructions. The facts giving rise to the contention are well stated by the trial judge in the following language:

"As stated in these affidavits, [affidavits filed in support of a motion for a new trial] the jury had been deliberating upon their verdict from about 4 o'clock p. m. of the 31st day of January, until proximately 5 o'clock on the 1st day of February, 1914. At this time, on Sunday afternoon, the judge being at the courthouse, was informed by the bailiff in charge

[1]Reported in 144 Pac. 284.

of the jury that it was impossible for the jury to agree; and the court understood this information to come from the jurors, and, so understanding, instructed the bailiff to bring the jury into court for the purpose of being discharged, and they were so brought in, the court having in mind to discharge them if this report proved to be true. When brought into court, the judge asked them if they were able to agree upon a verdict; they answered they were not. The court then further inquired if they thought if more time were given them for deliberation they might arrive at a verdict, when a portion of them said they thought they could, and others of them stated they did not think they could arrive at a verdict. Thereupon the court said to the jury, in substance, that it was a matter of importance that the jury, if possible, come to a conclusion and arrive at a verdict, in as much as it was a matter of considerable expense to the county, and would be additional expense to retry the case. Someone of the jurors then informed the court that they stood 11 to 1, but did not indicate, nor was it known upon which side the eleven were. The judge then said to the jurors that in as much as but one of the number disagreed with his fellow jurors, that the court could not and would not advise any juror to agree to a verdict contrary to his own judgment and conscience, but that it was proper for a juror under such circumstances to consider whether or not he might be mistaken in his views. The judge then added that he would request them to return to their jury room for further deliberation, and that it was their duty to carefully consider the evidence under the instructions of the court and endeavor, if possible, to arrive at a verdict. And sometime later, probably about three hours later, the jurors arrived at a verdict, which was returned into court."

The court also caused to be inserted in the record the following further statement:

"The court is of the opinion that the circumstances under which the jury were brought out, being for the purpose of discharge and with no intention of giving them further instructions in the case, did not constitute any misconduct; nor does the fact that neither the defendant, who was at the time out on bond, nor either of his attorneys were present, change the situation so as to render the court's conduct improper,

in as much as the court had the authority at any time when
satisfied the jury could not agree, to discharge them, either
in the presence or out of the presence of the defendant and
his attorneys.  The fact that when called into court for the
purpose of being discharged, a situation was revealed which
was unknown to the court, required the court to take action
of some character with reference to what was shown to be
the condition of the jury.  It was within the reasonable dis-
cretion of the court to determine whether they should be dis-
charged, or sent back to further deliberation.  What was
said by the court at the time was in no sense an instruction
on the evidence, or anything connected with the case; it was
a general admonition to jurors who were engaged in the de-
liberation upon their verdict, and was proper."

It is our opinion that the assignment of error is well taken.
It is a constitutional right of the accused in a criminal prose-
cution to appear and defend in person and by counsel (Const.,
art. 1, § 22); and by statute (Rem. & Bal. Code, § 2145;
P. C. 135 § 1181), it is provided that no person prosecuted
for an offense punishable by death, or by confinement in the
penitentiary or in the county jail, shall be tried unless per-
sonally present during the trial.  These are rights that per-
tain to the accused at every stage of the trial when his sub-
stantial rights may be affected—the giving to the jury spe-
cial instructions during the period of their deliberations
being no exception—and any denial of the right without the
fault of the accused is conclusively presumed to be preju-
dicial.  *State v. Wroth*, 15 Wash. 621, 47 Pac. 106; *State
v. Beaudin*, 76 Wash. 306, 136 Pac. 137; 1 Bishop, New
Criminal Procedure, § 273; *Hopt v. People of Utah*, 110
U. S. 574.

Since it is the right of the accused to be present at every
stage of the trial when his substantial rights may be affected,
it is no answer to say that, in the particular proceeding,
nothing was done which might not lawfully have been done
had he been personally present.  The excuse, if good for the
particular proceeding, would be good for the entire proceed-
ings; the result being a trial and conviction without his pres-

ence at all.   The wrong lies in the act itself, in the violation of the constitutional and statutory right of the accused to be present and defend in person and by counsel.

In the present case, the accused was absent without fault. It was a legal holiday, a day on which the court house doors could have been lawfully locked against him.   It was enough that he remained within call, and that he did so remain is evidenced by the fact that he was readily found after the jury had announced an agreement upon a verdict.

The judgment is reversed, and remanded for a new trial.

CROW, C. J., MOUNT, MAIN, and ELLIS, JJ., concur.