[No. 41564-0-II.   Division Two.   May 8, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. VERNON WAYNE BENNETT, *Appellant*.

*Manek R. Mistry* and *Jodi R. Backlund* (of *Backlund & Mistry*), for appellant.

*Jonathan L. Meyer, Prosecuting Attorney,* and *Sara I. Beigh, Deputy,* for respondent.

¶1 Van Deren, J. — Vernon Bennett appeals his convictions for unlawful delivery of a controlled substance, methamphetamine, to a minor, and unlawful delivery of methamphetamine to Ashleigh Penfield, both with school bus route stop enhancements; furnishing liquor to a minor; and unlawful possession of a controlled substance, methamphetamine. He argues that the trial court violated his and the public's right to an open and public trial when it held an in-chambers conference to discuss jury instructions and that the trial court erred when it imposed a school bus route stop sentence enhancement on his methamphetamine delivery to a minor conviction.[1] Finding no error, we affirm.

---

[1] In the unpublished portion of the opinion, we discuss Bennett's claims that (1) sufficient evidence does not support his convictions for methamphetamine delivery to a minor and for unlawful methamphetamine possession, (2) the trial court abused its discretion when it admitted into evidence photographs of Bennett's basement, (3) his convictions for methamphetamine delivery and methamphetamine possession violate state and federal constitutional protections against double jeopardy, (4) the trial court abused its discretion by not determining whether his two delivery convictions constituted the same criminal conduct for purposes of calculating his offender score, and (5) he received ineffective assistance of counsel because defense counsel did not argue at sentencing that the delivery convictions were the same criminal conduct.

## FACTS

¶2 According to Ashleigh[2] Penfield, in November 2008, she and Chelsea Hensley,[3] who was 17 at the time, went to Bennett's residence to smoke methamphetamine. Following an investigation and interviews with the persons involved, the State charged Bennett with unlawful delivery of a controlled substance, methamphetamine, to a minor, Hensley (count I), and unlawful delivery of methamphetamine to Penfield (count II), both with school bus route stop enhancements; furnishing liquor to a minor, Hensley, between November 21 and November 22 (count III); and unlawful possession of a controlled substance, methamphetamine, on November 23 (count IV).

¶3 At the close of the evidence at trial, the trial court judge and counsel met in chambers[4] to "finalize" the jury instructions. 2 Report of Proceedings (RP) at 145. After the conference, the trial court stated that it and the parties "had an opportunity to go over the instructions" and that the instructions had "been copied and collated." 2 RP at 145. Bennett stated on the record in open court that he had no objections to the instructions.

¶4 The jury convicted Bennett as charged. He appeals.

---

[2] The information filed in this case identifies Penfield's first name as "Ashleigh." Clerk's Papers (CP) at 2. The trial transcript refers to her as "Ashley." 1 Report of Proceedings (RP) at 60. We refer to her as "Ashleigh."

[3] Hensley's driver's license, admitted as an exhibit at trial, identifies her last name as "Hensley." Ex. 2. The information identified Hensley, a minor at the time, as "C.R.H." CP at 1. The trial transcript identifies her last name as "Hinsley." See, e.g., 1 RP at 62. We refer to her as "Hensley."

[4] The record indicates that Bennett was not present during this conference. The trial court referred to meeting only with the attorneys. After the trial recessed and the jury left the courtroom, the trial court judge said, "I want the attorneys to meet me in chambers. I want you to go that way." 2 RP at 145.

## ANALYSIS

### Public Trial Right

¶5 Bennett argues that the in-chambers discussion between counsel and the trial court about jury instructions violated his and the public's right to open and public trials under the state and federal constitutions. On the sparse record on appeal in this case, we disagree.

■ ■ ¶6 Whether a violation of the public trial right exists is a question of law we review de novo. *State v. Momah*, 167 Wn.2d 140, 147, 217 P.3d 321 (2009), *cert. denied*, 131 S. Ct. 160 (2010). The state and federal constitutions guarantee both criminal defendants and the public the right to open and public trials. U.S Const. amends. I, VI; Wash. Const. art. I, §§ 10, 22.

¶7 Washington appellate opinions have recognized a link between a criminal defendant's right to be present during critical stages of trial and the defendant's right to a public trial; this link, however, originates, without citation to authority, from *State v. Rivera*, 108 Wn. App. 645, 653, 32 P.3d 292 (2001). As a result, Washington courts have generally held that the defendant's public trial right encompasses " 'adversary proceedings' " during trial, such as evidentiary phases, suppression hearings, voir dire, and jury selection. *State v. Sadler*, 147 Wn. App. 97, 114, 193 P.3d 1108 (2008)[5] (emphasis and internal quotation marks

---

[5] On November 13, 2008, the State filed a petition for review of our decision in Sadler's case with our Supreme Court. On February 3, 2009, our Supreme Court first stayed consideration of the petition in *Sadler* pending its final decisions in *Momah* and *State v. Strode*, 167 Wn.2d 222, 217 P.3d 310 (2009). Following issuance of those opinions, on July 9, 2010, our Supreme Court again stayed the State's petition for review in *Sadler* pending a final decision in *State v. Wise*, 148 Wn. App. 425, 200 P.3d 266 (2009), *review granted*, 170 Wn.2d 1009 (2010). On May 3, 2011, the court also heard oral argument on the public trial right in *State v. Paumier*, 155 Wn. App. 673, 230 P.3d 212, *review granted*, 169 Wn.2d 1017 (2010) and *State v. Beskurt*, 159 Wn. App. 819, 246 P.3d 580, *review granted*, 172 Wn.2d 1013 (2011). On March 1, 2011, our Supreme Court stayed consideration of a petition for review in *State v. Koss*, 158 Wn. App. 8, 241 P.3d 415 (2010) pending

omitted) (quoting *Rivera*, 108 Wn. App. at 652). The corollary of this is usually stated as a rule that this right does not include "hearing[s] on purely ministerial or legal issues that do not require the resolution of disputed facts." *Sadler*, 147 Wn. App. at 114. But, even assuming a link exists between the defendant's right to be present during critical stages of trial and the public trial right, we caution against an overbroad reading of case law suggesting that the two rights are coextensive.

¶8 As our Supreme Court has recently observed, under the federal constitution, a criminal "defendant has a right to be present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge' " but "does not have a right to be present when his or her 'presence would be useless, or the benefit but a shadow.' " *State v. Irby*, 170 Wn.2d 874, 881, 246 P.3d 796 (2011) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-07, 54 S. Ct. 330, 78 L. Ed. 674 (1934), *overruled in part on other grounds sub nom. Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964)). For example, under the federal constitution a defendant has a right to be present during jury selection because " 'it will be in his power, if present, to give advice or suggestion or even to supersede his lawyers altogether.' " *Irby*, 170 Wn.2d at 883 (quoting *Snyder*, 291 U.S. at 106).

¶9 In contrast, in 2005 our Supreme Court stated the defendant's public trial right in broader terms in that it "serves to ensure a fair trial, to remind the officers of the court of the importance of their functions, to encourage witnesses to come forward, and to discourage perjury." *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005); *see also State v. Leyerle*, 158 Wn. App. 474, 479, 242 P.3d 921

---

its decision in *State v. Sublett*, 156 Wn. App. 160, 231 P.3d 231, *review granted*, 170 Wn.2d 1016 (2010). On January 4, 2012, our Supreme Court stayed consideration of Darrel Jackson's petition for review involving a public trial right issue in *State v. Smith*, 162 Wn. App. 833, 262 P.3d 72 (2011)—a case we consolidated on appeal—pending the court's decision in *Beskurt*. The law regarding a defendant's and the public's right to public trial proceedings is under scrutiny and continues to evolve as our Supreme Court addresses issues surrounding trial court closures.

(2010) (stating that the public trial right "ensure[s] a fair trial, foster[s] public understanding and trust in the judicial system, and give[s] judges the check of public scrutiny" (citing *Brightman*, 155 Wn.2d at 514; *Dreiling v. Jain*, 151 Wn.2d 900, 903-04, 93 P.3d 861 (2004))).

¶10 Recently, our Supreme Court also observed that the public's right encompasses circumstances where the public's presence " 'plays a significant positive role in the functioning of the particular process,' " such as a criminal "trial or a hearing on a motion or other similar proceeding." *Tacoma News, Inc. v. Cayce*, 172 Wn.2d 58, 72-73, 256 P.3d 1179 (2011) (quoting *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)). Further, as the United States Supreme Court has observed:

> The open trial thus plays as important a role in the administration of justice today as it did for centuries before our separation from England. The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.

*Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 508, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984).

¶11 Although the defendant's right to be present and the defendant's and the public's right to an open and public trial serve the same normative value—i.e., ensuring a fair trial—they differ in function. The defendant's right to be present encompasses situations in which he may *actively* contribute to his own defense, such as offering his input to his counsel during jury selection and the exercise of preemptory challenges, as well as critical stages of trial where his presence " 'has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge,' " such as potentially convincing jurors to change

their votes upon polling at the return of their verdict. *Irby*, 170 Wn.2d at 881 (quoting *Snyder*, 291 U.S. at 105-06); *see, e.g.*, *Irby*, 170 Wn.2d at 883; *State v. Rice*, 110 Wn.2d 577, 616, 757 P.2d 889 (1988); *see also Rice v. Wood*, 77 F.3d 1138, 1143 n.5 (9th Cir. 1996) (citing cases discussing the potential effect of the defendant's presence on the return of the verdict and jury polling). In contrast, the defendant's and the public's right to open and public trials also encompasses circumstances in which the public's mere presence *passively* contributes to the fairness of the proceedings, such as deterring deviations from established procedures, reminding the officers of the court of the importance of their functions, and subjecting judges to the check of public scrutiny. *See, e.g.*, *Brightman*, 155 Wn.2d at 514; *Leyerle*, 158 Wn. App. at 479.

¶12 Thus, even in proceedings involving purely legal matters, the public's presence may ensure the fairness of such proceedings, although the same cannot be said for ministerial or administrative matters that do not impact the defendant's rights.[6] *But see In re Det. of Ticeson*, 159 Wn. App. 374, 383-86, 246 P.3d 550 (2011) (holding that Washington law historically supports in-chambers conferences on purely legal issues).

---

[6] If the defendant's right to be present and the public trial right are coextensive, our Supreme Court has suggested that a defendant's right under the Washington constitution to " 'appear and defend' " may be broader than a defendant's federal constitutional right to be present, *Irby*, 170 Wn.2d at 885 n.6 (quoting WASH. CONST. art. I, § 22); by implication, that broader right would extend to the public. Washington case law does not condition a criminal defendant's right to " 'appear and defend' at a particular 'stage of trial' on what a defendant might do or gain by attending, or the extent to which the defendant's presence may have aided his defense." *Irby*, 170 Wn.2d at 885 n.6 (citing *State v. Shutzler*, 82 Wash. 365, 367, 144 P. 284 (1914)). Rather, Washington law conditions the right "on the chance that a defendant's 'substantial rights may be affected' at that stage of trial." *Irby*, 170 Wn.2d at 885 n.6 (quoting *Shutzler*, 82 Wash. at 367). Accordingly, even if the defendant's right to be present and the public trial right are coextensive under Washington law, both may be broader than their corresponding federal constitutional rights and, arguably, encompass circumstances where the defendant's and the public's mere presence passively contribute to the proceedings or, indeed, serve no function in aiding the defendant's defense. *See Irby*, 170 Wn.2d at 885 n.6.

¶13 *Sadler* is broadly cited for the proposition that in-chambers conferences to discuss purely legal or ministerial matters do not implicate the right to open and public trials, but *Sadler* rejected the State's argument that a hearing on a *Batson*[7] challenge need not be held in public. 147 Wn. App. at 116-18. Consistent with our Supreme Court's statements about the defendant's and the public's right to public trials, we held that "[b]ecause a *Batson* hearing involves factual and credibility determinations *and is relevant to the fairness and integrity of the judicial process as a whole* . . . the right to public trial exists in this context." *Sadler*, 147 Wn. App. at 118 (emphasis added).

██ ¶14 In *State v. Sublett*, 156 Wn. App. 160, 181-82, 231 P.3d 231, *review granted*, 170 Wn.2d 1016 (2010), we addressed whether an in-chambers conference to respond to a jury question that arose during deliberations about a particular jury instruction violated Sublett's public trial right. We observed that "in general, in-chambers conferences between the court and counsel on legal matters are not critical stages of the proceedings except when the issues involve disputed facts." 156 Wn. App. at 183 (citing *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 306, 868 P.2d 835, 870 P.2d 964 (1994)). We agree with our Supreme Court, *Sadler*, and *Sublett* and hold that there is no per se rule[8] that the issues raised during in-chambers conferences are not subject to public scrutiny and the defendant's right to be present.

██ ¶15 Here, we must address an in-chambers conference about jury instructions. The trial court recited on the

---

[7] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

[8] Division Three of this court addressed whether an in-chambers conference on jury instructions implicates a defendant's public trial right. *Koss*, 158 Wn. App. at 16-17. It held that the in-chambers conference addressed purely legal issues because it involved finalizing the jury instructions' language and did not involve disputed facts. *Koss*, 158 Wn. App. at 17. Furthermore, it observed that the defendant's failure to object to the instructions on the record following the chambers conference undermined his claim on appeal. *See Koss*, 158 Wn. App. at 17.

record what occurred during the in-chambers conference: the trial court and the parties "had an opportunity to go over the instructions" and the instructions had "been copied and collated." 2 RP at 145. We need not resolve whether Bennett or the public had a right to observe a purely legal discussion relevant to Bennett's trial because our record fails to reveal that any issues, factual or legal, arose or were discussed.

¶16 We recognize that some chambers conferences on jury instructions may be ministerial or administrative— e.g., numbering the instructions, checking the order of the instructions, verifying their typographical accuracy, etc.— but there are occasions when disputed facts and evidence may be discussed in an effort to influence the trial court's choice of jury instructions, and other chambers discussions may take such discussions beyond purely ministerial or administrative matters. In the context of jury instructions, a trial court may be asked to rule on the effect of disputed testimony for the inclusion or exclusion of requested jury instructions—e.g., accomplice liability instructions, self-defense instructions, lesser included or lesser degree crimes, or diminished capacity instructions—or may be asked to interpret the law as applicable to the facts and evidence in the case.

¶17 In order to obtain effective review of an in-chambers conference, the parties should make an adequate record in the trial court about what transpired during any conference so we can determine whether the conference dealt with purely ministerial issues or involved discussion or resolution of disputed facts or legal issues. The record before us shows only that the trial court and the parties reviewed, copied, and collated the jury instructions, all administrative or ministerial functions. Furthermore, Bennett did not subsequently discuss or object to the instructions in open

court.[9] Thus, the record does not reflect that the in-chambers conference involved anything beyond purely ministerial matters that did not give rise to either Bennett's or the public's right to open proceedings. Accordingly, on this record, we hold that the trial court did not violate Bennett's or the public's right to an open and public trial.

SCHOOL BUS ROUTE STOP SENTENCING ENHANCEMENT

¶18 Bennett additionally argues that the trial court erred by exceeding its statutory authority in imposing a school bus route stop sentence enhancement under former RCW 9.94A.533(6) (2008) on his conviction for methamphetamine delivery to a minor because such enhancements do not apply to convictions for methamphetamine delivery to a minor. We disagree.

■ ¶19 Defendants may challenge an illegal or erroneous sentence for the first time on appeal. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008). We review questions of statutory interpretation de novo. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). When interpreting a statute, we seek to ascertain the legislature's intent. *Jacobs*, 154 Wn.2d at 600. Where a statute's meaning is plain on its face, we must give effect to that meaning as expressing the legislature's intent. *Jacobs*, 154 Wn.2d at 600. We deter-

---

[9] Neither party designated the proposed jury instructions as part of the record on appeal so we cannot review whether there was any discussion about the choice of particular jury instructions. Moreover, the only record at trial about what occurred during the in-chambers conference was the trial court's recitation stated above. The better practice is for the parties and the trial court to hold these conferences in open court or to state on the record the nature of the in-chambers discussions, the specific issues discussed, and the results of in-chambers or sidebar conferences held at any point during a trial. *Ticeson*, 159 Wn. App. at 384 n.27. The burden on appeal is on Bennett to show a violation of either his or the public's right to open and public trials, e.g., that the public trial right applied to the particular issues discussed during an in-chambers conference. *See Smith*, 162 Wn. App. at 846 (holding that appellant failed to meet his burden of showing that the trial court violated his right to a public trial by sealing jury questionnaires used in open court during voir dire). Furthermore, appellants bear the burden of perfecting the record for appellate review, including the proposed jury instructions. *See* RAP 9.2(b). Thus, a complete absence of a record relating to the challenged action cannot compel appellate review.

mine the statute's plain meaning from the ordinary meaning of its language, as well as from the statute's general context, related provisions, and the statutory scheme as a whole. *Jacobs*, 154 Wn.2d at 600. We interpret statutes to give effect to all language in the statute and to render no portion meaningless or superfluous. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). We interpret statutes to harmonize them whenever possible. *State v. Powell*, 167 Wn.2d 672, 695-96, 223 P.3d 493 (2009).

■ ¶20 RCW 69.50.401 provides:

> (1) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.
>
> (2) Any person who violates this section with respect to:
>
> . . . .
>
> (b) Amphetamine, including its salts, isomers, and salts of isomers, or methamphetamine . . . is guilty of a class B felony.

RCW 69.50.406(1), the relevant delivery to a minor statute, provides:

> Any person eighteen years of age or over who *violates RCW 69.50.401* by distributing a controlled substance listed in Schedules I or II which is a narcotic drug or methamphetamine . . . to a person under eighteen years of age is guilty of a class A felony punishable by the fine authorized by RCW 69.50.401(2) (a) or (b), by a term of imprisonment of up to twice that authorized by RCW 69.50.401(2) (a) or (b), or by both.

(Emphasis added.) Former RCW 9.94A.533(6) provided:

> *An additional twenty-four months shall be added* to the standard sentence range for any ranked offense involving a violation of chapter 69.50 RCW *if the offense was also a violation of RCW 69.50.435* or [former] 9.94A.605 [(2003)]. All enhancements under this subsection shall run consecutively to all other sentencing provisions, for all offenses sentenced under this chapter.

(Emphasis added.) Finally, RCW 69.50.435(1) provides:

*Any person who violates RCW 69.50.401* by manufacturing, selling, delivering, or possessing with the intent to manufacture, sell, or deliver a controlled substance listed under RCW 69.50.401 or who violates RCW 69.50.410 by selling for profit any controlled substance or counterfeit substance classified in schedule I, RCW 69.50.204, except leaves and flowering tops of marihuana to a person:

. . . .

(c) Within one thousand feet of a school bus route stop designated by the school district;

. . . .

may be punished by a fine of up to twice the fine otherwise authorized by this chapter, but not including twice the fine authorized by RCW 69.50.406, or by imprisonment of up to twice the imprisonment otherwise authorized by this chapter, *but not including twice the imprisonment authorized by RCW 69.50.406,* or by both such fine and imprisonment. *The provisions of this section shall not operate to more than double the fine or imprisonment otherwise authorized by this chapter for an offense.*

(Emphasis added.)

¶21 Thus, by the statutes' plain language RCW 69.50-.406(1) applies when a person "violates" RCW 69.50.401 by delivering a controlled substance to a minor, thus elevating the offense to a class A felony and allowing imposition of a sentence twice that authorized by RCW 69.50.401. Former RCW 9.94A.533(6) applies to "violation[s]" of RCW 69.50-.435, and RCW 69.50.435(1) applies when a person "violates" RCW 69.50.401 within 1,000 feet of a school bus route stop.

¶22 The legislature expressly limited RCW 69.50.435(1)'s prohibition on more than doubling fines or imprisonment *"authorized by this chapter* for an offense." (Emphasis added.) RCW 69.50.435(1) does not reference any prohibition on sentence enhancements under chapters other than chapter 69.50 RCW, such as former RCW 9.94A.533(6), which is at issue here.

¶23 Were we to interpret this portion of RCW 69.50-.435(1) otherwise, it would prohibit imposition of the mandatory school bus route stop enhancement under former RCW 9.94A.533(6), thus bringing the two statutes into conflict. But we harmonize statutes whenever possible. *Powell*, 167 Wn.2d at 695-96. Accordingly, former RCW 9.94A-.533(6)'s school bus route stop enhancement is unaffected by RCW 69.50.435(1)'s limitation on sentence doubling.

¶24 In sum, a person violates RCW 69.50.435(1) by violating RCW 69.50.401 within 1,000 feet of a school bus route stop. Because Bennett violated RCW 69.50.435(1) by delivering methamphetamine to Hensley within 1,000 feet of a school bus route stop, former RCW 9.94A.533(6) required imposition of a 24-month sentence enhancement. The trial court did not err in doing so, and Bennett's claim fails.

¶25 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

WORSWICK, A.C.J., and ARMSTRONG, J., concur.