FILED
COURT OF APPEALS
DIVISION II

2013 APR 16 AM 9: 08

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42091-1-II |
| Respondent, | |
| v. | |
| BRIAN DANIEL BONBRIGHT, | UNPUBLISHED OPINION |
| Appellant. | |

PENOYAR, J. — Brian Daniel Bonbright appeals his convictions of three counts of third degree child rape,[1] one count of third degree child molestation,[2] and one count of felony communication with a minor for immoral purposes.[3] Bonbright argues that a public trial right violation occurred when the trial court met in chambers, without him, to discuss a jury question with counsel. He also challenges the trial court's imposition of a community custody term that exceeded the statutory maximum sentence when combined with the term of confinement imposed. Finally, Bonbright challenges several community custody conditions. There was no public trial right violation, but we remand for resentencing because the trial court did not have the statutory authority to (1) impose a community custody term that, when combined with the term of confinement imposed, exceeded the statutory maximum sentence; (2) prohibit Bonbright from contacting SMK's family members for life; or (3) order Bonbright to obtain a substance abuse evaluation.

---

[1] In violation of RCW 9A.44.079.

[2] In violation of RCW 9A.44.089.

[3] In violation of RCW 9.68A.090(2).

## FACTS

In 2009, Bonbright[4] lived in Olympia with his wife and two young daughters. SMK, Bonbright's wife's 15-year-old cousin, frequently visited the Bonbright home while her parents were divorcing. SMK went to the Bonbright home after school approximately three times a week; she also spent the night between five and six times per month. SMK "became part of [the] family like she was another daughter." 3 Report of Proceedings (RP) at 173.

After SMK's spring break, the nature of her relationship with Bonbright changed. Bonbright began sending SMK text messages with "dirty pictures," including photographs of his penis, or "talking about stuff" that he wanted to do with SMK. 2 RP at 19.

One night, Bonbright was lying on a couch and told SMK he was waiting for her. She lay next to him; Bonbright then took SMK's hand, put it down his pants, and rubbed it against his penis. He also put his hand up SMK's shirt. Approximately a week later, Bonbright had sexual intercourse with SMK. Bonbright had sexual intercourse with SMK on two more occasions.

In February 2010, SMK met with her mother and a counselor, Becky Cox. At one point during the appointment, SMK spoke with the counselor alone. SMK told Cox that she had had sexual intercourse with Bonbright three times. Cox told SMK that she was required to report what SMK had told her to law enforcement.

The State charged Bonbright with three counts of third degree child rape, one count of third degree child molestation, and one count of communication with a minor for immoral purposes. The jury found Bonbright guilty as charged.

---

[4] At the time of his trial, in April 2011, Bonbright was 37 years old.

During deliberations, the jury sent the judge a written question. The judge, prosecutor, and defense counsel met in chambers to discuss their response. The question asked the court:

> What is the legal definition of "immoral purposes"? Does the jury have to unanimously agree to the specific date and time of a specific text message that is immoral, or can the jury unanimously agree that an immoral photograph or message was sent by the Defendant without specific agreement as to a specific message? Can the jury unanimously agree that it was sent within a time frame?

Clerk's Papers (CP) at 86. The trial court responded, "The Court cannot answer your questions. Please re-read your instructions." CP at 86.

The trial court imposed a sentence of 60 months' confinement for each count and 36 months of community custody. The trial court ordered Bonbright to comply with several conditions during the community custody term. Bonbright appeals.

## ANALYSIS

### I. PUBLIC TRIAL

Bonbright contends that a public trial right violation occurred when the trial court and counsel conferred in chambers to determine how to respond to a jury inquiry. On this record, we hold that the trial court did not violate Bonbright's or the public's right to an open and public trial.

Whether a public trial right violation exists is a question of law we review de novo. *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005). The state and federal constitutions guarantee criminal defendants and the public the right to open and public trials. U.S. CONST. amends. I, VI; WASH. CONST. art. I, §§ 10, 22; *State v. Bennett*, 168 Wn. App. 197, 201, 275 P.3d 1224 (2012). The right to a public trial "applies to all judicial proceedings." *State v. Momah*, 167 Wn.2d 140, 148, 217 P.3d 321 (2009). "[T]he requirement of a public trial is primarily for the benefit of the accused: that the public may see he is fairly dealt with and not

3

unjustly condemned and that the presence of interested spectators may keep his triers keenly alive to a sense of the responsibility and to the importance of their functions." *Momah*, 167 Wn.2d at 148.

Our Supreme Court has recently addressed whether an in-chambers conference to discuss a jury question seeking clarification of a jury instruction implicates the public trial right. *State v. Sublett*, 176 Wn.2d 58, 292 P.3d 715 (2012). In *Sublett*, the jury submitted a question to the trial court seeking clarification of a jury instruction. 176 Wn.2d at 67. The trial court met with counsel in chambers to address the question. *Sublett*, 176 Wn.2d at 67. Counsel agreed to the trial court's answer to the jury question, which stated that the jury must reread its instructions. *Sublett*, 176 Wn.2d at 67. The Supreme Court applied the experience and logic test and held that a public trial right violation had not occurred. *Sublett*, 176 Wn.2d at 72. The experience prong asks "'whether the place and process have historically been open to the press and general public.'" *Sublett*, 176 Wn.2d at 73 (quoting *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)). The logic prong asks "'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Sublett*, 176 Wn.2d at 73 (quoting *Press*, 478 U.S. at 8). The court concluded that: "Because the jury asked a question concerning the instructions, we view this as similar in nature to proceedings regarding jury instructions in general. Historically, such proceedings have not necessarily been conducted in an open courtroom." *Sublett*, 176 Wn.2d at 75.

As in *Sublett*, here, the in-chambers conference involved a jury inquiry regarding a jury instruction. Historically, open court proceedings have not been required to discuss inquiries regarding jury instructions. Further, no witnesses or testimony were involved and the question

and answer were placed on the record. *See Sublett*, 176 Wn.2d at 77. On this record, we hold that the conference did not implicate either Bonbright's or the public's right to open proceedings.

II.    COMMUNITY CUSTODY TERM

Bonbright correctly asserts that the trial court erred by ordering 60 months of confinement and 36 months of community custody when the maximum sentence was 60 months. The trial court did not have statutory authority to impose this sentence.

A court's sentencing authority is limited to that granted by statute. *State v. Skillman*, 60 Wn. App. 837, 838, 809 P.2d 756 (1991). We review de novo questions of statutory interpretation. *Bennett*, 168 Wn. App. at 207.

"[A] court may not impose a sentence providing for a term of confinement or community custody that exceeds the statutory maximum for the crime as provided in chapter 9A.20 RCW." RCW 9.94A.505(5). Bonbright committed five class C felonies; the statutory maximum sentence for each of those crimes is 60 months. RCW 9A.44.079(2); RCW 9A.44.089(2); RCW 9.68A.090(2); RCW 9A.20.021(1)(c).

Under former RCW 9.95A.701(1)(a) (2009), the trial court was required to sentence Bonbright to three years of community custody. But "[t]he term of community custody specified by this section shall be reduced by the court whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime as provided in RCW 9A.20.021." Former RCW 9.94A.701(8).

Here, the trial court sentenced Bonbright to 60 months' confinement. The trial court also ordered Bonbright to serve 36 months of community custody. Bonbright's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum. We "remand to the trial court to either amend the community custody term or

5

resentence [Bonbright] . . . consistent with [former RCW 9.94A.701(8)]." *State v. Boyd*, 174 Wn.2d 470, 473, 275 P.3d 321 (2012).[5]

III.   COMMUNITY CUSTODY CONDITIONS

A.   No Contact

First, Bonbright contends that the trial court erred by imposing the community custody condition ordering "[n]o contact with the victim, SMK[,] and immediate family for life and/or as noted by the Court." CP at 74. Bonbright contends that the condition is unauthorized because it exceeds the statutory maximum sentence. Because the judgment and sentence orders Bonbright not to contact the victim for five years, the maximum statutory sentence, we conclude that the trial court did not err with regard to its prohibition of contact with SMK; however, the judgment and sentence is silent as to her family, and we remand to the trial court to clarify that Bonbright shall not contact SMK's immediate family for five years.

RCW 9.94A.703(3)(f) authorizes the trial court to impose "crime-related prohibitions" as part of any community custody term. A "[c]rime-related prohibition" is "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." Former RCW 9.94A.030(10). Crime-related prohibitions are subject to the same time limit as the statutory maximum for the defendant's crime. *See State v. Armendariz*, 160 Wn.2d 106, 119, 156 P.3d 201 (2007). We review crime-related prohibitions to determine whether the trial court's decision is manifestly unreasonable or based on untenable grounds or reasons. *State v. Corbett*, 158 Wn. App. 576, 597, 242 P.3d 52 (2010).

---

[5] The State asks us to order the trial court to amend the judgment and sentence to provide for a term of community custody to coincide with the period of earned release. Bonbright contends that the trial court must impose a fixed determinate sentence that does not vary according to the amount of early release. We decline to restrict the resentencing court's discretionary authority on remand and thus do not address this issue.

Bonbright's felony judgment and sentence reads, "The defendant shall not have contact with S.M.K. . . . including, but not limited to, personal, verbal, telephonic, written or contact through a third party for 5 years (not to exceed the maximum statutory sentence)." CP at 65. Accordingly, "as noted by the Court," Bonbright may not have contact with SMK for five years; this is the statutory maximum for the crimes. *See* RCW 9A.20.021(1)(c); RCW 9A.44.079(2); RCW 9A.44.089(2); RCW 9.68A.090(2). However, the judgment and sentence do not mention SMK's immediate family; therefore, we remand to clarify that Bonbright shall not contact SMK's immediate family for five years.

B.     Right to Parent

Bonbright contends that the condition prohibiting him from having unsupervised contact with minors unconstitutionally infringes on his fundamental right to parent. Bonbright has three daughters; the children were ages 5, 7, and 16 at the time of Bonbright's trial. Because Bonbright viewed SMK as a member of his family, we conclude that the condition is reasonably necessary to further the State's compelling interest in preventing harm and protecting children.

Parents have a fundamental right to raise their children without State interference. *Corbett*, 158 Wn. App. at 598. "Sentencing courts can restrict fundamental parenting rights by conditioning a criminal sentence if the condition is reasonably necessary to further the State's compelling interest in preventing harm and protecting children." *Corbett*, 158 Wn. App. at 598. Accordingly, we must determine whether the record supports the proposition that prohibiting Bonbright from unsupervised in-person contact with his biological minor children is reasonably necessary to prevent harm to his children.

7

This case is factually similar to *Corbett*, 158 Wn. App. 576, and *State v. Berg*, 147 Wn. App. 923, 198 P.3d 529 (2008), *abrogated on other grounds by State v. Mutch*, 171 Wn.2d 646, 254 P.3d 803 (2011). In *Corbett*, we upheld a community custody provision that prohibited the defendant from contact with his biological minor sons when the defendant sexually abused his minor stepdaughter while she was living in his home. 158 Wn. App. at 599. We affirmed the provision, which prohibited the defendant from contacting all minors, because the defendant had a history of using the trust established in a parental role to sexually abuse his stepdaughter. *Corbett*, 158 Wn. App. at 599. Similarly, in *Berg*, Division One of this court affirmed the trial court's order prohibiting the defendant from contact with female minors when the victim lived in the home where the defendant was acting as her parent when the sexual abuse occurred. 147 Wn. App. at 942-43.

SMK was treated like a member of the family when the sexual abuse occurred. At trial, Bonbright's wife testified that SMK "became part of [the] family like she was another daughter. We treated her just that way." 3 RP at 173. Bonbright testified that SMK "became basically an intricate member of the family." 3 RP at 202. SMK spent the night at the Bonbright home several times per month and visited the house approximately three times each week. Bonbright abused his role as a parental figure during this time. Because Bonbright's victim was treated as a member of his family, we conclude that the trial court did not err by prohibiting Bonbright from unsupervised in-person contact with his biological minor children.

8

C.     Sexual Deviancy Treatment

Bonbright argues that the trial court erred by ordering him to participate in a sexual deviancy treatment program. Bonbright alleges that (1) the condition is not sufficiently crime-related because there is no evidence he has a sexual deviancy and (2) the court did not make the requisite findings to order his participation in such a program. He contends that a sex offense conviction is not "*per se* sufficient to show an offender has a sexual deviancy." Reply Br. of Appellant at 8. Because there is evidence that Bonbright has a sexual deviancy and the treatment program requirement is sufficiently crime related, we hold that the trial court did not err by ordering the treatment.

Bonbright relies on *State v. Bahl*, 164 Wn.2d 739, 193 P.3d 678 (2008), to support his assertion. His reliance on *Bahl* is inapposite. In *Bahl*, our Supreme Court concluded that a condition prohibiting the defendant from possessing or controlling sexual stimulus for his particular deviancy, as defined by the supervising Community Corrections Officer and therapist, was unconstitutionally vague. 164 Wn.2d at 761. Bonbright's challenge, in contrast, is not a vagueness challenge.

Here, a jury convicted Bonbright of third degree child rape, third degree child molestation, and felony communication with a minor for immoral purposes. Under RCW 9.94A.703(3)(c), the court may order an offender to "[p]articipate in crime-related treatment or counseling services" as part of any term of community custody. Contrary to Bonbright's assertions, there is evidence that Bonbright has a sexual deviancy: his sexual contact with SMK was criminal. The sexual deviancy treatment program is related to his crime. We conclude that the trial court had authority to order Bonbright to participate in a sexual deviancy treatment program.

D.      Sexually Explicit Material

Bonbright also argues that the condition prohibiting him from possessing or perusing sexually explicit material is unconstitutionally vague. He contends that "'sexually explicit material' does not provide ordinary persons with clear warning of what is proscribed." Br. of Appellant at 41. Because the phrase is sufficiently clear, we hold that the condition is not unconstitutionally vague.

The due process vagueness doctrine under the Fourteenth Amendment and article I, section 3 of the state constitution requires that citizens have fair warning of proscribed conduct. *Bahl*, 164 Wn.2d at 752. "A statute is unconstitutionally vague if it '(1) . . . does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) . . . does not provide ascertainable standards of guilt to protect against arbitrary enforcement.'" *Bahl*, 164 Wn.2d at 752-53 (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)). A statute is presumed to be constitutional unless it appears unconstitutional beyond a reasonable doubt, and the party challenging a statute carries the burden of proving its unconstitutionality. *State v. Halstien*, 122 Wn.2d 109, 118, 857 P.2d 270 (1993). "'[I]mpossible standards of specificity' . . . are not required because some degree of vagueness is inherent in the use of language." *Halstien*, 122 Wn.2d at 118 (quoting *City of Seattle v. Eze*, 111 Wn.2d 22, 26, 759 P.2d 366 (1988)).

Both parties rely on *Bahl*, 164 Wn.2d 739. In *Bahl*, our Supreme Court held that the phrase "sexually explicit" in a community custody condition prohibiting the defendant from frequenting establishments whose primary business pertains to sexually explicit or erotic material was not unconstitutionally vague. 164 Wn.2d at 760. The Supreme Court concluded

that the condition was sufficiently clear when all of the challenged terms, with their dictionary definitions, were considered together. *Bahl*, 164 Wn.2d at 759-60.

First, the *Bahl* court examined the dictionary definition of "sexually explicit:"

> The dictionary definition of "explicit" is "characterized by full clear expression: being without vagueness or ambiguity . . . UNEQUIVOCAL." WEBSTER'S [THIRD NEW INTERNATIONAL DICTIONARY 801 (2002)]. [The defendant] says that adding "sexual" to the term does not make it any clearer, because a "clear expression of sexuality" or "unequivocal sexual" is not illuminating. [The defendant's] parsing of the phrase is artificial. Implementing the dictionary definition, the phrase more correctly is "clearly expressed sexual" materials or materials that are unequivocally sexual in nature.

164 Wn.2d at 758-59.

The Supreme Court also noted that the phrase "sexually explicit" is defined in RCW 9.68.130. *Bahl*, 164 Wn.2d at 759. Under RCW 9.68.130(1), it is unlawful to display "sexually explicit material if [the actor] knowingly exhibits such material on a viewing screen so that the sexually explicit material is easily visible from a public thoroughfare, park or playground or from one or more family dwelling units." RCW 9.68.130(2) defines "[s]exually explicit material" as

> any pictorial material displaying direct physical stimulation of unclothed genitals, masturbation, sodomy (i.e. bestiality or oral or anal intercourse), flagellation or torture in the context of a sexual relationship, or emphasizing the depiction of adult human genitals: PROVIDED HOWEVER, That works of art or of anthropological significance shall not be deemed to be within the foregoing definition.

Further, the Supreme Court noted that other courts, including the Ninth Circuit, have concluded that the phrase "sexually explicit conduct" is neither vague nor overly broad. *See United States v. Rearden*, 349 F.3d 608, 620 (9th Cir. 2003). Although the community custody provision at issue in *Bahl* is different from the condition at issue here, the Supreme Court's analysis is helpful. The dictionary definition and the statutory definition of sexually explicit

11

material provide Bonbright with sufficient notice of what conduct is prohibited. We conclude that the condition Bonbright challenges is not unconstitutionally vague.

E.  Overbreadth

Bonbright asserts that the conditions ordering him to "[s]tay out of business establishments offering sexually explicit material or entertainment" and to "[n]ot frequent or loiter in areas where children congregate (including, but not limited to, fast food establishments, shopping malls, parks, playgrounds, schools, video arcades, etc.)" are unconstitutionally overbroad. Br. of Appellant at 42. Because the prohibitions are crime-related conditions of community custody, we reject his overbreadth challenge.

"A criminal statute that 'sweeps constitutionally protected free speech activities within its prohibitions' may be overbroad and thus violate the First Amendment." *State v. Stephenson*, 89 Wn. App. 794, 800, 950 P.2d 38 (1998) (quoting *City of Seattle v. Abercrombie*, 85 Wn. App. 393, 397, 945 P.2d 1132 (1997). When considering whether a criminal statute is overbroad, courts consider whether (1) the challenged statute reaches constitutionally protected speech or expression and (2) whether it proscribes a real and substantial amount of speech. *State v. Knowles*, 91 Wn. App. 367, 372, 957 P.2d 797 (1998). "However, an offender's constitutional rights during community placement are subject to SRA-authorized infringements, including crime-related prohibitions." *State v. McKee*, 141 Wn. App. 22, 37, 167 P.3d 575 (2007) (rejecting defendant's argument that community custody conditions relating to pornography were overbroad because they were crime-related conditions).

Here, Bonbright is not challenging criminal statutes. He is challenging conditions imposed as a part of his community custody sentence. He does not argue that the trial court imposed conditions that do not reasonably relate to the circumstances of his offense, his risk of

12

reoffending, or the community's safety. *See* RCW 9.94A.703(3)(d). We reject Bonbright's claims that the conditions at issue are overbroad.

F.     Substance Abuse

Bonbright contends that the trial court erred when it imposed conditions ordering him to (1) "[s]ubmit to random urinalysis and/or breathalyzer at the direction of a Community Corrections Officer" and (2) "[O]btain a Substance Abuse evaluation and comply with any recommended treatment." CP at 75. We conclude that the trial court had statutory authority to prohibit Bonbright from consuming alcohol and to impose related monitoring conditions; however, the trial court did not have statutory authority to order Bonbright to obtain a substance abuse evaluation when it played no part in his crimes.

"As part of any term of community custody, the court may order an offender to . . . [r]efrain from consuming alcohol." RCW 9.94A.703(3)(e). A court has authority to impose requirements that ensure compliance with community custody conditions. *See* RCW 9.94A.703(3)(d) ("As part of any term of community custody, the court may order an offender to . . . [p]articipate in rehabilitative programs or otherwise perform affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community."); *State v. Combs*, 102 Wn. App. 949, 952, 10 P.3d 1101 (2000) (concluding that trial court had statutory authority to order defendant to submit to polygraph testing to monitor compliance with the community placement order).

The State concedes that because substance abuse played no part in Bonbright's crimes, the trial court erred by ordering Bonbright to obtain a substance abuse evaluation. We agree. Without evidence that substance use or abuse contributed to Bonbright's crimes, the court could not impose any substance abuse evaluation or treatment conditions.

13

42091-1-II

We affirm Bonbright's convictions but remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Penoyar, J.

We concur:

_____
Quinn-Brintnall, J.

_____
Worswick, C.J.

14