# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>           Respondent,<br><br>    v.<br><br>JOHN MURRIETTA, JR.,<br><br>           Respondent. | No. 86448-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

FELDMAN, J. — Following a five-day trial, a jury convicted John Murrietta Jr. of three counts of child molestation in the first degree based on allegations of his seven-year-old niece. Murrietta seeks a new trial, arguing that he was deprived of the right to be present for a portion of the jury selection process. Although the trial court erred when it addressed substantive issues related to jury selection in Murrietta's absence, and that error implicated his constitutional rights, Murrietta fails to establish that the error was manifest. Murrietta also fails to demonstrate ripeness and/or manifest constitutional error with respect to conditions of community custody he failed to challenge below. As a result, we decline to address the merits of Murrietta's claims on appeal.

I

Before Murrietta's trial, the parties selected a jury from two separate panels that were summoned to appear in court for voir dire on different days. Prior to

appearing in court, potential jurors completed a detailed written questionnaire and some potential jurors from each panel were excused solely based on their responses. During voir dire of the first panel in open court, the court dismissed additional potential jurors for hardship and for cause. Voir dire of the second panel took place over two days, and the court again dismissed some jurors for hardship and for cause. On the second day, the court released the second panel of prospective jurors after a morning session of voir dire. The court instructed the venire that those selected to serve on the jury would receive an e-mail from the court by 4:00 p.m. that afternoon and that those who did not receive any communication from the court should presume their jury service was complete. The court recessed, with the intention of addressing peremptory challenges when the court reconvened.

During the lunch recess, two potential jurors who remained on the venire—jurors 25 and 108—e-mailed the court expressing concerns about their ability to serve on the jury. Juror 25 asked to be excused from the jury, stating, "I don't think I can a jury on this case. I don't feel fit in these types of case because of the sensitivity." Juror 108 likewise asked to be excused from the jury and explained she "did not have the courage to" express her thoughts in court. Juror 108 stated, "I am now sure that I will not be able to make a fair judgment for either side. My emotions will most likely get in the way . . . I do not believe I will be a good fit to serve." The court sent an e-mail to defense counsel and the prosecutor quoting the entirety of both messages and asked whether there was any objection to

"excusing both jurors at this point in time." One minute later, defense counsel responded, "No objection to either."

When the court reconvened after lunch, about 30 minutes following this exchange, the court memorialized the substance of the messages received from the potential jurors and the court's communication with counsel. Both counsel confirmed there had been no objection to excusing jurors 25 and 108. The court stated, "So we went ahead. We are excusing those two individuals. Again, that's 25 and 108." Then, each party exercised peremptory challenges. The State raised four objections to Murrietta's peremptory strikes under GR 37, and the court granted one of those objections. The court empaneled a jury of twelve individuals and three alternates.

The jury convicted Murrietta as charged. Murrietta appeals.

II

Murrietta contends he was deprived of his constitutional right to be present from the part of jury selection that took place over e-mail. He further maintains that, notwithstanding the failure to preserve the claim of error below, appellate review is appropriate because he had "no opportunity to object to the lunchtime dismissals." We disagree.

While Murrietta suggests there was no point in objecting because by the time he learned about the dismissals they had "already happened," the record does not demonstrate that an objection when the court reconvened would have been ineffective. After describing the messages received during the recess and the court's discussion with counsel, the court stated that it was now "excusing those

two individuals." The court did not indicate that it had already responded to jurors 25 and 108. Nor did the court suggest that it had deviated from the previously announced plan to communicate with the prospective jurors only after the parties selected a jury and only with those selected to serve. Although he could have done so, Murrietta did not object to the excusals, ask to confer with counsel, or otherwise enable the trial court to remedy any error.

The failure to timely object usually waives appellate review of a claimed violation of the right to be present. *See State v. Slert*, 186 Wn.2d 869, 872-73, 383 P.3d 466 (2016) (defendant waived right to appellate review of alleged violation of right to be present when he lodged no objection in court upon learning that several jurors "were dismissed" at a prior in-chambers conference in his absence). But a defendant may raise a claim of error for the first time on appeal if it is a manifest error affecting a constitutional right. RAP 2.5(a)(3); *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011). "In order to benefit from this exception, 'the appellant must identify a constitutional error and show how the alleged error actually affected the [appellant]'s rights at trial.'" *Gordon*, 172 Wn.2d at 676, (quoting *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009)). To determine if this exception is applicable, "It is proper to 'preview' the merits of the constitutional argument to determine whether it is likely to succeed." *State v. Kirwin*, 165 Wn.2d 818, 823, 203 P.3d 1044 (2009) (quoting *State v. Walsh*, 143 Wn.2d 1, 8, 17 P.3d 591 (2001)).

A criminal defendant has a constitutional right to be present at all critical stages of trial under article I, section 22 of the Washington State Constitution and

- 4 -

the Due Process Clause and the Sixth Amendment to the United States Constitution. *State v. Irby*, 170 Wn.2d 874, 880-81, 246 P.3d 796 (2011). The "crux" of this constitutional right is the "right to be present when evidence is being presented or whenever the defendant's presence has 'a relation, reasonably substantial,' to the opportunity to defend against the charge." *State v. Bremer*, 98 Wn. App. 832, 834, 991 P.2d 118 (2000) (internal citations omitted). The right is not "absolute," and due process requires the defendant's presence only "'to the extent that a fair and just hearing would be thwarted by his absence.'" *Irby*, 170 Wn.2d at 881 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 107-08, 54 S. Ct. 330, 78 L. Ed. 674 (1934)).

Jury selection is "unquestionably a 'stage of the trial' at which a defendant's 'substantial rights may be affected.'" *Id.* at 885 (quoting *State v. Shutzler*, 82 Wash. 365, 367, 144 P. 284 (1914)). A proceeding that involves evaluating "the ability of particular jurors to try [the] specific case" is an integral part of jury selection and exclusion from such a proceeding violates a defendant's right to be present. *Id.* at 882, 884; *see* also *State v. Schierman*, 192 Wn.2d 577, 606, 438 P.3d 1063 (2018) (defendant's exclusion from in-chambers discussion and rulings on for-cause challenges violated his right to be present).

*Irby* controls our analysis. Before Irby's trial on murder and burglary charges, the venire was sworn and the court administered a questionnaire. *Irby*, 170 Wn.2d at 877. Before voir dire, the trial court reviewed the responses and sent an e-mail message to counsel asking whether they would agree to excuse ten jurors, some for potential hardships and others for cause. *Id*. at 877–78. Defense

counsel and the prosecuting attorney responded to the e-mail and jointly agreed to release seven of the ten identified potential jurors, including one juror whose parent had been murdered. *Id.* Irby was in custody at the time and there was nothing in the record to suggest that counsel consulted with him before the jurors were dismissed. *Id.* at 884. Our Supreme Court held that this "e-mail exchange was a portion of the jury selection process" and Irby's exclusion violated his due process right to be present. *Id.* at 882, 884.

Likewise here, the court suggested excusing prospective jurors 25 and 108, at the jurors' requests, for reasons specific to the facts of Murrietta's case. Although Murrietta was present during voir dire when both individuals were questioned as part of the venire, he was not present when they made the statements that resulted in their dismissal and when the court and counsel assessed the effect of those statements. As in *Irby*, the record does not show that Murrietta's attorneys conferred with him; and given that counsel replied one minute after the court sent the e-mail soliciting counsel's input, it is unlikely that they did so. *Id.* at 884. Additionally, consultation cannot be presumed without an affirmative showing in the record, and here there is none. *Irby*, 170 Wn.2d at 884; *State v. Love*, 183 Wn.2d 598, 608, 354 P.3d 841 (2015). Murrietta's exclusion from the court's exchange with counsel deprived him of the opportunity "to give advice or suggestion or even to supersede" his counsel. *Id.* at 883. And the record does not show that Murrietta agreed to waive his presence during this portion of jury selection. Under *Irby*, conducting a portion of the jury selection process that evaluated the "ability of particular jurors to try this specific case" by e-mail and

outside of Murrietta's presence was an error affecting his constitutional rights. *Id*. at 882.

Having identified an error of constitutional dimension, we turn to whether Murrietta has established that the error was manifest. RAP 2.5(a)(3). A manifest error is one that had an actual effect on the appellant's rights at trial. *See Gordon*, 172 Wn.2d at 676. The appellant bears the burden to demonstrate actual prejudice by making a plausible showing that the error had "practical and identifiable consequences." *O'Hara*, 167 Wn.2d at 99; *State v. Kalebaugh*, 183 Wn.2d 578, 584, 355 P.3d 253 (2015).

Murrietta argues the error here was manifest because (1) the trial court could have easily waited until after the lunch recess to address the jurors' messages in his presence, (2) he was deprived of the opportunity to advocate for further questioning to rehabilitate the potential jurors, and (3) either juror 25 or 108 was preferable to juror 123, who he unsuccessfully sought to remove though a peremptory challenge, and who would not have been empaneled if both jurors 25 and 108 had not been excused. But none of these assertions establish "practical and identifiable" prejudicial consequences. The lack of a timely objection when the court recounted the e-mail exchanges and excused the prospective jurors in open court "itself is strong evidence" that Murrietta perceived no prejudice until after he was convicted of the charges. *See Slert*, 186 Wn.2d at 879.

Moreover, even if defense counsel had not immediately agreed to dismiss the jurors, the trial court has an independent duty to protect the defendant's right to a fair and impartial jury, and must "excuse potential jurors who have biased

opinions or feelings about the case." *Id.* at 877. Even though Murrietta had not previously raised challenges as to either of the jurors, there is no reasonable possibility that jurors 25 and 108 would have sat on the jury after they learned more detailed information about the nature of the case in voir dire and unequivocally asserted that they were not "fit" to serve and would be unable to render a "fair judgment." *See State v. Smith*, 3 Wn.3d 718, 726, 555 P.3d 850 (2024) ("unequivocal statements indicating bias" may establish actual bias and require excusal).

As to the claim that either of the dismissed jurors was preferable to juror 123, the record does not establish that juror 123 was partial or otherwise unqualified. In addressing the State's GR 37 objection, Murrietta emphasized that juror 123 spoke "authoritatively" about trauma, had a prior relationship with someone who had been sexually assaulted, and said she would consider "consistency" as one factor in assessing credibility, delay in disclosure would not significantly influence her assessment, and younger children may lack sufficient knowledge to lodge false allegations of sexual abuse. None of these issues raise an inference of bias or partiality.

It is well settled that Murrietta had no right to be tried by a particular juror or jury, and only a right to be tried by a qualified and impartial one. *See State v. Gentry*, 125 Wn.2d 570, 615, 888 P.2d 1105 (1995); *State v. Philips,* 65 Wash 324, 326-27, 118 P. 43 (1911). He fails to allege, much less establish, that he was not tried by an impartial jury or any other basis to conclude that he was actually prejudiced by the excusals. Because Murrietta has not met his burden to

demonstrate a manifest constitutional error, his claim of error related to the dismissal of prospective jurors 25 and 108 is not reviewable for the first time on appeal.

III

Murrietta also challenges conditions of community custody imposed in his judgment and sentence that require him to (1) remain within "geographic boundaries, as set forth in writing" by his Community Corrections Officer (CCO) or in a Stay Out of Drug Area order, (2) inform his supervising CCO and treatment provider of any "dating relationship" and disclose his "sex offender status" to potential intimate partners, (3) consent to "home visits" by the Department of Corrections "to monitor compliance with supervision," and (4) refrain from accessing or possessing "sexually explicit" and "erotic materials" or depictions of "sexually explicit conduct," as defined by referenced statutes, absent prior approval by a treatment provider.

Here again, because Murrietta challenges these conditions for the first time on appeal, he "is not entitled to review unless he can show that (1) his challenge 'is ripe for review on its merits' and (2) the . . . conditions are a 'manifest error affecting a constitutional right.'" *State v. Nelson*, __ Wn.3d __, 565 P.3d 906, 912-13 (2025) (quoting *State v. Cates*, 183 Wn.2d 531, 534, 354 P.3d 832 (2015)); RAP 2.5(a)(3). Previewing the merits of his arguments, *see Kirwin*, 165 Wn.2d at 823, this court and our Supreme Court have rejected similar challenges to the community custody conditions at issue. *See State v. Lundstrom*, __ Wn. App. 2d ___, 572 P.3d 1243, 1245-46 (2025) (geographic boundary restriction not

unconstitutionally vague); *State v. Lee*, 12 Wn. App. 2d 378, 401-02, 460 P.3d 701 (2020) (upholding disclosure condition on constitutional grounds); *State v. Gantt*, 29 Wn. App. 2d 427, 456-57, 540 P.3d 845, *review denied*, 3 Wn.3d 1002 (2024) (upholding disclosure condition on constitutional and crime-related grounds); *Cates*, 183 Wn.2d at 534-35 (challenge to nearly identical condition requiring consent to home visits not ripe for review); *State v. J.H.-M.,* 4 Wn.3d 648, 662, 566 P.3d 847 (2025) (rejecting constitutional challenges to identical condition prohibiting possession of depictions of sexually explicit conduct).

In short, Murrietta fails to meet his burden to establish ripeness (as to the condition requiring consent to home visits) or manifest constitutional error (with respect to the remaining conditions).  We therefore decline to review these claims of error.

Affirmed.

Feldman, J.

WE CONCUR:

Fearing, J.