FILED
COURT OF APPEALS
DIVISION II

2013 DEC -3 AM 9: 19

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42520-3-II |
| Respondent, | |
| v. | PUBLISHED OPINION |
| WAYNE BURDETTE, | |
| Appellant. | |

BJORGEN, J. — Wayne Burdette appeals from his jury conviction for obstructing an officer in performance of his lawful duties. He argues (1) the trial court violated his right to a public trial and the public's right to open proceedings by not conducting discussions about the jury instructions and two communications from the jury in open court; (2) the trial court violated his right to be present during critical stages of his trial by discussing its response to the second jury communication outside his presence; and (3) the admission during sentencing of evidence seized from his trailer violated the guarantees against warrantless searches of the federal constitution's Fourth Amendment and the state constitution's article I, section 7. He also alleges that defense counsel was ineffective by not moving to suppress a shotgun seized from his trailer during a warrantless protective sweep.

We hold that the trial court did not violate either Burdette's right to a public trial or the public's right to open proceedings, because none of these rights attached to the challenged proceedings. We hold that Burdette's absence during the court's consideration of the second jury communication violated his right to be present at a critical stage of trial, but that this error

was harmless. We also hold that, based on the record before us, the suppression and ineffective assistance of counsel issues are moot.

## FACTS

### I. THE ARRESTS AND SEARCH

On the night of June 10, 2011, a Mossyrock police officer stopped Burdette for speeding in his truck and making a turn without signaling. Upon learning the reasons for the traffic stop, Burdette became argumentative and increasingly hostile toward the officer. At one point, Burdette began walking toward the officer with his hand behind his back, despite the officer's repeated orders to stop and to get back in his truck. Burdette, who was "highly upset and aggravated" eventually returned to and entered his truck. Report of Proceedings (RP) (Aug, 17, 2011) at 77-78.

After a Washington State Patrol trooper arrived, the police officer approached Burdette's truck on the driver's side, while the trooper approached from the passenger's side. The trooper saw that Burdette had a gun and warned the officer, who pulled out his firearm and ordered Burdette to show him his hands. Burdette did not comply, but instead reached downward with his right hand out of the officer's sight. After the trooper told the officer that Burdette had a gun at the small of his back, Burdette slowly moved his right hand to the steering wheel. The officer removed Burdette from the truck, handcuffed him, and removed a loaded .40 caliber handgun from Burdette's waistband. Burdette was arrested for driving under the influence.

After Burdette's release from custody on the driving under the influence charge, the State charged him with one count of felony harassment and one count of obstructing a law

enforcement officer in the performance of his official duties. The State obtained an arrest warrant based on these charges.

When law enforcement officers went to Burdette's trailer to execute the warrant, they called for him to come outside. As Burdette was being handcuffed, an officer entered the trailer's "threshold" and performed a protective sweep for weapons. Clerk's Papers (CP) at 21. The officer observed a 12-gauge pump action shotgun located "directly inside the doorway"; the shotgun was positioned so that its barrel was pointed at "head level" at the doorway, and it could be fired while Burdette lay in bed. CP at 21. The sheriff's office subsequently obtained a search warrant for Burdette's trailer and, during the search, found four written statements generally indicating a severe dislike of and murderous intent toward officers.

## II. THE JURY INSTRUCTIONS AND RESPONSES TO JURY COMMUNICATIONS

After hearing pretrial motions, the trial court and counsel met in chambers to discuss jury instructions. Before closing argument, the trial court stated outside the jury's presence, "Yesterday we met in chambers and went over the jury instructions." RP (Aug. 19, 2011) at 2. The trial court asked for the parties' objections to the instructions, and Burdette stated he had none.

During deliberations, the jury submitted two communications to the trial court. The first communication, submitted at 1:20 p.m., read, "In the Harrassment [sic] (Bodily Injury) charge, why is #2 – 'that the words or conduct of defendant placed officer in reasonable fear that the threat to kill would be carried out'; when (Threat to Kill) charge already states that?" CP at 26 (emphasis omitted). The trial court responded by stating that the instruction was in error and correcting it. The second communication, submitted at 2:26 p.m., on the second day of trial,

3

stated, "Jury is deadlocked over several issues relating to the defendant's intent." CP at 27. The trial court's written response stated, "[P]lease continue to deliberate in an effort to reach verdicts." CP at 27. The court's written responses to both jury communications also stated that they were submitted "after affording all counsel/parties opportunity to be heard." CP at 27. The record does not reflect where any discussions about the trial court's responses were held.[1]

The jury acquitted Burdette of the harassment charge, but found him guilty of the obstruction charge. He appeals.

## ANALYSIS

### I. PUBLIC TRIAL RIGHT

Burdette argues that the trial court violated his right to a public trial and the public's right to open proceedings by not holding discussions about jury instructions in open court and by not discussing its responses to the two jury communications in open court. Based on our Supreme Court's recent decision in *State v. Sublett*, 176 Wn.2d 58, 292 P.3d 715 (2012) (plurality opinion), we hold that the public trial right did not attach to either of these proceedings. Thus, the trial court did not violate either Burdette's or the public's right by not holding these proceedings in open court.

### A.     The Legal Standards

Whether a violation of the public trial right exists is a question of law we review de novo. *State v. Momah*, 167 Wn.2d 140, 147, 217 P.3d 321 (2009), *cert. denied*, 131 S. Ct. 160 (2010).

---

[1] The record states that the court took a recess "until the jury reaches a verdict" and continues when the jury returned to read its verdict. *See* RP (August 19, 2011) 51.

4

No. 42520-3-II

A criminal defendant has a right to a public trial under the federal and state constitutions. *State v. Lormor*, 172 Wn.2d 85, 90-91, 257 P.3d 624 (2011); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. Likewise, the public has a complementary right to open proceedings under the federal and state constitutions. *Lormor*, 172 Wn.2d at 91; U.S. CONST. amend. I; WASH. CONST. art. I, § 10. These rights, however, are not absolute, and a trial court may close the courtroom under certain circumstances. *Momah*, 167 Wn.2d at 148; *State v. Easterling*, 157 Wn.2d 167, 174-75, 137 P.3d 825 (2006). Specifically, Washington courts may close a part of a trial to which the public trial right applies only after applying the *Bone-Club*[2] guidelines and making specific findings on the record justifying a closure. *Momah*, 167 Wn.2d at 148.

However, "not every interaction between the court, counsel, and defendants will implicate the right to a public trial, or constitute a closure if closed to the public." *Sublett*, 176 Wn.2d at 71. Thus, the first step in the analysis is to determine whether the actions at issue fall under the umbrella of these rights.

---

[2] These guidelines are:
> 1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a "serious and imminent threat" to that right.
> 2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
> 3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
> 4. The court must weigh the competing interests of the proponent of closure and the public.
> 5. The order must be no broader in its application or duration than necessary to serve its purpose.

*State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995) (quoting *Allied Daily Newspapers v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

To make that determination, the Supreme Court in *Sublett* adopted an "experience and logic" test.[3] *Sublett*, 176 Wn.2d at 72. *Sublett* admittedly dealt with a criminal defendant's right to a public trial under the Washington Constitution, article I, section 22, not the public's right to open proceedings under the First Amendment to the United States Constitution or article I, section 10 of our state constitution. Burdette here raises challenges under both rights. The *Sublett* court, though, adopted the experience and logic test from *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986) (*Press* II), a First Amendment case, and noted further that the public's right to open proceedings under article I, section 10 of our state constitution mirrors the First Amendment. *Sublett*, 176 Wn.2d at 71 n.6, 73. *Sublett* also observed that our Supreme Court has "historically analyzed allegations of a court closure under either article I, section 10 or article I, section 22 analogously, although each is subject to different relief depending upon who asserts the violation." *Sublett*, 176 Wn.2d at 71 n.6. Thus, the plain force of *Sublett* is that we use the experience and logic test to determine whether an event triggers the protections of either set of constitutional rights securing open trials.[4]

---

[3] The lead opinion in *Sublett* was a plurality opinion by four justices. Justice Madsen's concurrence, though, agreed with both the lead opinion's conclusion that not all trial proceedings closed to the public implicate the public trial right and its adoption and application of the experience and logic test. *Sublett*, 176 Wn.2d at 92-94. Thus, these holdings commanded the support of a majority of the court. *See* 176 Wn.2d at 95, 99.

[4] The decisions of the Court of Appeals differ as to whether a criminal defendant has standing to raise the public's right to open proceedings. In *State v. Wise*, 148 Wn. App. 425, 442-43, 200 P.3d 266 (2009), *reversed on other grounds*, 176 Wn.2d 1, 288 P.3d 1113, 1120 (2012), we held that a criminal defendant does not have standing to raise the public's right to open proceedings. On the other hand, Division One held in *In re Detention of Ticeson*, 159 Wn. App. 374, 381-83, 246 P.3d 550 (2011), that criminal defendants do have standing to raise the public's right to open proceedings, but may not raise such a claim for the first time on appeal absent showing of "practical and identifiable consequences at trial." 159 Wn. App. at 383. We need not try to

The experience and logic test determines whether "the core values of the public trial right are implicated" by the trial event at issue. *Sublett*, 176 Wn.2d at 73. To do so, the test poses two questions. First, the experience prong asks "'whether the place and process have historically been open to the press and general public.'" *Sublett*, 176 Wn.2d at 73 (quoting *Press II*, 478 U.S. at 8). Next, the logic prong asks "'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Sublett*, 176 Wn.2d at 73 (quoting *Press II*, 478 U.S. at 8). In applying the logic prong, a court should consider "the values served by open courts." *Sublett*, 176 Wn.2d at 74-75. One manner of doing so is through comparison of the proceeding's nature to that of the criminal trial itself, such as whether the same criminal rights attach, the importance of the proceeding in the overall trial, and whether the jury is present during the proceeding. *Sublett*, 176 Wn.2d at 74. Not every case, though, "will fit cleanly within a comparison between the proceeding at issue and trial in general," so the trial or reviewing court must consider whether openness will "'enhance[] both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.'" *Sublett*, 176 Wn.2d at 74-75 (alteration in original) (quoting *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 508, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984) (*Press* I)). If the answer to both the experience and logic prong is yes, the public trial right attaches. *Sublett*, 176 Wn.2d at 73.

---

unsnarl this apparent conflict here, because the experience and logic test plainly shows that the trial court did not err under either constitutional guarantee.

No. 42520-3-II

B.    Responses to Jury Communications

Burdette argues that the trial court's failure to discuss the two jury communications in open court violated his right to a public trial and the public's right to open proceedings. This argument stumbles at the outset, since the record does not reflect whether the discussion about the trial court's responses to the jury's communications was held outside the public's purview or merely off the record, but in open court. In *State v. Bennett*, 168 Wn. App. 197, 206-07, 275 P.3d 1224 (2012), we observed that appellants bear the burden of demonstrating a violation of the public trial right and urged parties and counsel to "make an adequate record . . . about what transpired during any conference" not held in open court in order to obtain effective appellate review. Our admonition applies with equal strength to making a record at trial of *where* such conferences occurred. Because the record does not show where the discussions about the jury communications occurred, we arguably could reject Burdette's claim because he cannot meet his burden of demonstrating that these discussions did not occur in open court. However, because *Sublett* clearly resolves Burdette's claim and discussion of the *Sublett* decision will be beneficial in subsequent cases, we reach the merits of the issue.

The *Sublett* court specifically examined whether consideration of a jury question about an instruction implicated the public trial right. *Sublett*, 176 Wn.2d at 75. In applying the experience prong, the *Sublett* court observed that CrR 6.15(f)(1)[5] was "the only authority [it

---

[5] CrR 6.15(f)(1) provides:

> The jury shall be instructed that any question it wishes to ask the court about the instructions or evidence should be signed, dated and submitted in writing to the bailiff. *The court shall notify the parties of the contents of the questions and provide them an opportunity to comment upon an appropriate response. Written questions from the jury, the court's response and any objections thereto shall be made a part of the record. The court shall respond to*

8

could] find governing this process." *Sublett*, 176 Wn.2d at 77. The court further observed that CrR 6.15(f)(1) requires the trial court to make the jury's question, any objections, and the trial court's response part of the record, but the rule does not require the trial court to seek objections and give its response in open court. *Sublett*, 176 Wn.2d at 76-77. The *Sublett* court concluded that "historically, . . . a proceeding in open court to discuss the [jury] question itself and any appropriate answer has not been required." *Sublett*, 176 Wn.2d at 77. Thus, the appellants did not meet the experience prong, and the public trial right did not attach to discussions regarding jury questions about its instructions. *See Sublett*, 176 Wn.2d at 77.

In applying the logic prong, the *Sublett* court held that "[CrR 6.15(f)(1)] advances and protects those interests underlying the constitutional requirements of open courts with its directive to put the question, answer, and objections in the record." *Sublett*, 176 Wn.2d at 77. *Sublett* further reasoned that

> [n]one of the values served by the public trial right is violated under the facts of this case. No witnesses are involved at this stage, no testimony is involved, and no risk of perjury exists. The appearance of fairness is satisfied by having the question, answer, and any objections placed on the record pursuant to CrR 6.15. Similarly, the requirement that the answer be in writing serves to remind the prosecutor and judge of their responsibility because the writing will become part of the public record and subject to public scrutiny and appellate review. This is not a proceeding so similar to the trial itself that the same rights attach, such as the right to appear, to cross-examine witnesses, to present exculpatory evidence, and to exclude illegally obtained evidence. Neither Sublett nor Olsen claim or

---

> *all questions from a deliberating jury in open court or in writing.* In its discretion, the court may grant a jury's request to rehear or replay evidence, but should do so in a way that is least likely to be seen as a comment on the evidence, in a way that is not unfairly prejudicial and in a way that minimizes the possibility that jurors will give undue weight to such evidence. *Any additional instruction upon any point of law shall be given in writing.*

(Emphasis added.)

argue any of these rights, nor could they since such rights are inapplicable in the discussion of, or resolution of, questions from the jury.

*Sublett*, 176 Wn.2d at 77-78. Under these criteria, the appellants did not meet the logic prong either, and the public trial right did not attach to discussion of the jury questions about the instructions. *See Sublett*, 176 Wn.2d at 77-78.

As in *Sublett*, the first jury communication in the present appeal posed a question about a jury instruction. Accordingly, *Sublett* controls the issue and dictates that the public trial right did not attach to the trial court's response to that first communication. For this reason, Burdette's claim that his public trial right was violated when the trial court answered the first jury communication outside of open court fails.

The jury also submitted a second communication stating, "Jury is deadlocked over several issues relating to the defendant's intent." CP at 27. This communication was not a direct request for clarification of the jury instructions, but rather appears to be a request for instructions about how to proceed when the jury feels it is deadlocked on a specific issue. Given the procedures that govern how a trial court addresses a jury's claim that it is deadlocked, neither the experience prong nor the logic prong demonstrates that the public trial right attached.

A jury's assertion that it is deadlocked may result in the trial court declaring a mistrial. *State v. Jones*, 97 Wn.2d 159, 163, 641 P.2d 708 (1982). However, to create the "'extraordinary and striking'" circumstances that justify a mistrial, there must be a factual basis for the trial court's determination that the jury is hopelessly deadlocked. *Jones*, 97 Wn.2d at 164 (quoting *State v. Bishop*, 6 Wn. App. 146, 150, 491 P.2d 1359 (1971)). At times, the jury's own statement that it is hopelessly deadlocked can serve as the factual basis for the trial court's decision to grant a mistrial. *Jones*, 97 Wn.2d at 164. However, the trial court may consider additional

10

circumstances when determining whether the jury's assertion is a genuine statement of hopeless deadlock, such as the length of the trial and the length of time the jury has been deliberating. *Jones*, 97 Wn.2d at 164.

Here, the jury's bald assertion of deadlock came, at most, a few hours after the jury began deliberating, and the statement came less than an hour after the jury was provided with a corrected instruction on the harassment charge. Considering these factors, it appears that the trial judge did not consider the jury's statement to be a genuine statement of hopeless deadlock, which would trigger consideration of a mistrial. Furthermore, there is no indication that Burdette asked for a mistrial based on the jury's assertion of deadlock.

We recognize the difference between the trial court considering whether the jury's assertion is a genuine statement of hopeless deadlock and considering whether the jury's assertion of hopeless deadlock justifies a mistrial. A motion for a mistrial has historically been heard on the record in open court. Therefore, the experience prong of the *Sublett* test indicates that the public trial right would attach. In addition, a motion for a mistrial based on a hung jury requires considering the defendant's "'valued right to have his trial completed by a particular tribunal'" and the defendant's constitutional protection against double jeopardy. *Jones*, 97 Wn.2d at 162 (quoting *Arizona v. Washington*, 434 U.S. 497, 503 n.11, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978)). Considering the important constitutional rights implicated by a motion for a mistrial, the logic prong would also require that the defendant's public trial right attaches.

However, a jury's initial request for an instruction about how to proceed if they are deadlocked is not a motion for a mistrial. Rather, if the trial court has reason to believe that the statement is not a genuine statement of hopeless deadlock, it is similar to a request for

11

clarification of the jury instructions governing how to proceed in deliberations. That appears to be the case here. The jury's second message was not that it was hopelessly deadlocked on the case or any of its aspects, but rather was its first communication that it was having trouble agreeing on a specific legal question, the element of intent. The trial court, significantly, did not treat the jury's message as a declaration of deadlock by polling the jurors or by considering a mistrial. The jury was requesting guidance or clarification on a specific issue. As explained above, the public trial right does not attach to jury questions regarding clarification of jury instructions. *Sublett*, 176 Wn.2d at 76-77. This request was most similar to that sort of clarification. Accordingly, given all the facts of this case, Burdette's public trial right did not attach to an initial jury question requesting clarification about how to proceed when it feels it is deadlocked.

Under the experience and logic test, Burdette's public trial right did not attach to the court's responses to the jury's communications during deliberation.

C.     Initial Discussions of Jury Instructions

Turning now to the initial discussion of jury instructions, Burdette points out that this event occurred in closed session, because the court stated on the record and in open court, "Yesterday we met in chambers and went over the jury instructions." RP (Aug. 19, 2011) at 2. He argues that this discussion violated his right to a public trial and the public's right to open proceedings.

*Sublett* dealt with jury questions about already issued instructions, not about the formulation of jury instructions. Nonetheless, *Sublett* viewed the issue before it as similar in nature to proceedings regarding jury instructions in general. *Sublett*, 176 Wn.2d at 75. It

observed that CrR 6.15(a) requires the parties to submit proposed instructions in writing. *Sublett*, 176 Wn.2d at 75. It further observed that, before the trial court instructs the jury, CrR 6.15(c) requires the trial court to provide counsel the opportunity to object to the instructions in the jury's absence. *Sublett*, 176 Wn.2d at 75. It noted that Washington law requires these objections, as well as their grounds, to be made on the record to preserve them for review. *Sublett*, 176 Wn.2d at 75-76. Finally, the court stated, "We have found no challenges to [CrR 6.15(a) or CrR 6.15(c)] or, prior to [CrR 6.15's] enactment, any case requiring the discussion of jury instructions to be held in open court." *Sublett*, 176 Wn.2d at 76.

These observations disclose the Supreme Court's view that Washington law has not historically required such discussions to be held in open court. Thus, Burdette fails to meet the experience prong, and the public trial right did not attach to any of the jury instruction discussions in this case.

## II. Right to be Present

Burdette next argues that the trial court violated his right under the federal and state constitutions to be present during critical stages of his trial when it discussed its response to the jury's second communication outside his presence. We agree that the proceedings violated Burdette's right to be present, but hold the error to be harmless in these circumstances.

In *State v. Irby*, 170 Wn.2d 874, 246 P.3d 796 (2011), the trial judge conducted an e-mail exchange with counsel over whether certain potential jurors should be excused for cause. The defendant argued that his exclusion from this exchange violated the Fourteenth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution.

13

*Irby* held that under the Sixth and the Fourteenth Amendments to the United States Constitution, a criminal defendant has a fundamental right to be present at all critical stages of a trial. *Irby*, 170 Wn.2d at 880-81 (citing *Rushen v. Spain*, 464 U.S. 114, 117, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983); *United States v. Gagnon*, 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985). The defendant has that right "'whenever his presence has a relation, reasonably substantial, to the ful[l]ness of his opportunity to defend against the charge.'" *Irby*, 170 Wn.2d at 881 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06, 54 S. Ct. 330, 78 L. Ed. 674 (1934), *overruled in part on other grounds sub nom. Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964)). Drawing from *Irby*, we stated in *Bennett*, 168 Wn. App. at 203-04, that "[t]he defendant's right to be present encompasses situations in which he may *actively* contribute to his own defense, . . . as well as critical stages of trial where his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." (Internal quotation marks omitted.)

*Irby* also noted, though, that because the relationship between the defendant's presence and his "'opportunity to defend'" must be "'reasonably substantial,'" a defendant does not have a right to be present when his or her "'presence would be useless, or the benefit but a shadow.'" *Irby*, 170 Wn.2d at 881 (quoting *Snyder*, 291 U.S. at 106-07). The due process right to be present is therefore not absolute; rather "'the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence.'" *Irby*, 170 Wn.2d at 881 (quoting *Snyder*, 291 U.S. at 107-08).

*Irby* concluded that the e-mail exchange was a portion of the jury selection process, that it was a critical stage of the trial, and that the defendant had a right to be present under the federal

14

constitutional guarantees. *Irby*, 170 Wn.2d at 882-84. The court further held that under article I, section 22 of the state constitution, the accused in a criminal prosecution has the right "'to appear and defend in person and by counsel . . . *at every stage of the trial when his substantial rights may be affected.*'" *Irby*, 170 Wn.2d at 884-85 (quoting *State v. Shutzler*, 82 Wash. 365, 367, 144 P. 284 (1914). *Irby* held that jury selection was such a stage, and the defendant had a right to be present at it. *Irby*, 170 Wn.2d at 885.

Little case law was found on a defendant's right to be present during a court's consideration of a jury communication such as the second one posed here. Generally, a criminal defendant "does not have a right to be present during . . . conferences between the court and counsel on legal matters, at least where those matters do not require a resolution of disputed facts." *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 306, 868 P.2d 835 (1994) (citation omitted). More specifically, our decision in *Sublett* held that a conference in chambers concerning "how to respond to the jury's request for a clarification in one of the trial court's instructions" was not a critical stage of the proceedings because it involved only a purely legal question. *State v. Sublett*, 156 Wn. App. 160, 183, 231 P.3d 231 (2010), *aff'd*, 176 Wn.2d 58, 292 P.3d 715 (2012).[6]

The one case we have examined dealing with the right to be present for discussion of a statement of deadlock is *United States v. Fontanez*, 878 F.2d 33, 34-35 (2d Cir. 1989). In that case, the jury informed the court that it was unable to reach a verdict. Even though the government told the court that the defendant was about to be escorted back to the courtroom, the

---

[6] The appellants in *Sublett* abandoned the right-to-be-present issue in their petitions for review to the Supreme Court. *Sublett*, 176 Wn.2d at 68 n.3.

court gave a modified *Allen*[7] charge to the deadlocked jury and ordered them to resume deliberations. Within two hours, the jury returned a guilty verdict.

The Second Circuit reversed the conviction, holding that the defendant had a right to be present at this stage. In its analysis the court cited *Illinois v. Allen*, 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970), for the rule that a criminal defendant has the right to be present at "all stages" of trial. *Fontanez*, 878 F.2d at 35. *Allen*, however, was based on the Confrontation Clause of the Sixth Amendment and cannot be read to override later decisions such as *Rushen* and *Gagnon*, cited above, linking the constitutional right to be present to "critical" stages of trial. *Allen*, 397 U.S. at 338. *Fontanez* also based its ruling on Federal Rule of Criminal Procedure 43, which, with limited exceptions, states that a defendant has the right to be present at "all stages" of trial. *Fontanez*, 878 F.2d at 35. In sum, even though its "all stages" rule may not be applicable in state court, *Fontanez* does hold that a defendant has a constitutional right to be present when the court is responding to a message that the jury is deadlocked.

As discussed in part I. B., above, the essence of the second jury communication was an inquiry as to how the jury should proceed when it felt deadlocked on the defendant's intent. To a defendant, all may pivot on how long the court will require a deadlocked jury to continue deliberations before declaring a mistrial. In some situations, a defendant may desire a quick mistrial and in others more deliberations in hope of an acquittal. Whatever the case, much is at stake at this stage and a defendant may reasonably wish to actively participate by making his opinion known to his lawyer or, if allowed, to the judge. For these reasons, the defendant's presence at this stage has a direct relation to the fullness of his opportunity to defend against the

---

[7] *See Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896).

16

charge. Therefore, under the rules announced in *Irby* and *Bennett*, above, Burdette had a right under the state and federal constitutions to be present when the response to the second communication from the jury was discussed.

A violation of the right to be present at trial, whether anchored in due process or article I, section 22 of our state constitution, is subject to harmless error analysis. *Irby*, 170 Wn.2d at 885-86 (citing *State v. Caliguri*, 99 Wn.2d 501, 664 P.2d 466 (1983)). The burden of proving harmlessness is on the State and it must do so beyond a reasonable doubt. *Irby*, 170 Wn.2d at 886.

Although the presence of prejudice was only glancingly briefed, the facts show it very unlikely that Burdette's absence had any effect on the judge's response to the second jury communication. The trial judge read the jury instructions and the parties gave closing argument in the morning of the second day of trial. Thus, with an intervening lunch break, the second jury communication at 2:26 p.m. could have come only after short deliberations. On this record, the judge's directive to continue deliberating after so short a period seems nearly inevitable. Further, the jury's message was not that it was hopelessly deadlocked, but that it could not decide whether the required element of intent was present. With disagreement focused on one issue, the trial judge had even more reason to direct further deliberations. Finally, Burdette does not argue what he would have said or done had he been present when the second jury communication was discussed. Under these circumstances, the error in proceeding without Burdette caused him no prejudice. The error was harmless beyond a reasonable doubt.

### III. Suppression and Ineffective Assistance Issues

Over Burdette's objection, the State successfully moved the trial court to consider during sentencing the written statements seized from Burdette's trailer. The trial court expressly referred to these statements in imposing Burdette's term of confinement, but it did not impose any community custody or other probationary sentence conditions. Burdette completed his term of confinement on April 13, 2012.

Burdette now renews his argument that probable cause did not support the search warrant through which the statements were seized. He also argues for the first time on appeal that the warrantless protective sweep of his trailer violated his rights under the federal constitution's Fourth Amendment and the state constitution's article I, section 7. Finally, he argues that defense counsel was ineffective in failing to move to suppress the evidence on the grounds that the warrantless protective sweep was unlawful. These claims, however, are now moot.

An issue is moot, among other reasons, if it "involves only abstract propositions or questions, . . . or if a court can no longer provide effective relief." *Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 99, 117 P.3d 1117 (2005). The controversy at issue in the litigation must be "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41, 57 S. Ct. 461, 81 L. Ed. 617 (1937).

The seized writings were admitted only during the sentencing phase of trial; thus, if we found Burdette's claims meritorious, the only remedy we could provide would be a remand for resentencing. Burdette, though, has served his term of confinement and is not on any type of

18

probation or community custody. Thus, no effective relief can be provided, and the issues are moot.

Burdette argues that a ruling in his favor on these issues would still provide him effective relief if we remanded for a new trial based on the public trial right or right to be present issues. But, as discussed above, no public trial right was violated and Burdette's exclusion from consideration of the second jury communication was harmless error. Consequently, we order no remand or retrial. Burdette argues also in a single, conclusory sentence that these issues are not moot because "the lawfulness of the search may impact collateral matters, including any civil suit [he] elects to pursue." Reply Br. of Appellant at 4. However, "[p]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *State v. Hathaway*, 161 Wn. App. 634, 650 n.10, 251 P.3d 253, *review denied*, 172 Wn.2d 1021 (2011); *see also Orwick v. City of Seattle*, 103 Wn.2d 249, 256, 692 P.2d 793 (1984) ("It is not the function of trial or appellate courts to do counsel's thinking and briefing."). Thus, we do not consider Burdette's collateral consequences argument.

For these reasons, the suppression and ineffective assistance of counsel issues are moot.[8]

---

[8] Burdette also filed a statement of additional grounds (SAG). RAP 10.10. In his SAG, Burdette argues that (1) "[t]he charges were unjustified. . . . It is not illeagle [sic] to speak in the U.S.A. See First Amendment! All I have done is speak," and (2) "Speaking does not justifie [sic] a S[pecial] W[eapons] A[nd] T[actics] team raid and search of my home. Fourth Amendment." SAG at 1.

First, although RAP 10.10 does not require appellants to refer to the record or cite authority, it requires them to inform this court of the "nature and occurrence of alleged errors." Burdette's assertion of error is too vague to allow this court to identify his alleged First Amendment issue, and we do not reach it.

Second, Burdette appears to challenge the protective sweep and subsequent search of his home. But, as we discuss above, these issues are moot.

No. 42520-3-II

We affirm.

_Bjorgen, J._
BJORGEN, J.

I concur:

_Johanson, A.C.J._
JOHANSON, A.C.J.

QUINN-BRINTNALL, J. (concurring in the result) — I agree with the result reached by the majority, that Wayne Burdette's convictions should be affirmed. However, I write separately because, in my opinion, several issues that the majority addresses rely on assumptions regarding facts outside the record and, thus, are more appropriately addressed through a personal restraint petition (PRP).[9] Specifically, I do not believe that there are sufficient facts in the record to allow this court to address the merits of Burdette's claim that (1) the responses to jury communications violated his public trial right, and (2) the trial court violated his right to be present.

Burdette argues that his public trial right was violated when the court issued responses to jury communications. The majority holds that under the experience and logic test, closing the courtroom for discussing the proper response to jury communications does not constitute a closure that implicates the public trial right. But the record before this court does not contain any information establishing the court was closed at all. "[A] closure 'occurs when the courtroom is completely and purposefully closed to spectators so that no one may enter and no one may leave.'" *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012) (quoting *State v. Lormor*, 172 Wn.2d 85, 93, 257 P.3d 624 (2011)). Accordingly, to apply the experience and logic test, the majority assumes the discussion occurred in a closed courtroom. It is well-settled that this court will not resolve issues that rely on facts outside the record on appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). An issue that relies on facts outside the record is properly addressed in a PRP. *McFarland*, 127 Wn.2d at 335.

I would not have addressed the merits of the above issues due to the inadequate record. If, however, the record established the facts the majority assumes, I agree with the result of the

---

[9] RAP 16.3.

majority's analysis. Specifically, I will note that the majority opinion makes an important distinction between a jury communication that is a genuine statement of hopeless deadlock and a jury's request for instructions about how to proceed when they believe they may be deadlocked. If the trial court determines that the jury's communication is a genuine statement of hopeless deadlock, then the jury communication triggers procedures to examine the situation and consider whether a mistrial is appropriate. *State v. Jones*, 97 Wn.2d 159, 164, 641 P.2d 708 (1982). Accordingly, I agree that a defendant's public trial right does not attach to a jury communication until the trial court determines that the communication is a genuine statement of hopeless deadlock.

Burdette also asserts that the trial court violated his right to be present at both the initial discussion regarding jury instructions and the discussions regarding the trial court's response to the jury communications. There is no evidence in the record establishing whether Burdette was present at either of these events. To address Burdette's claim that the initial discussion regarding jury instructions violated his right to be present, the majority relies on speculation that Burdette was not present.

And to properly address Burdette's challenge to the trial court's discussion regarding responses to the jury communications, the majority also must assume that Burdette was not present—an assumption which is contradicted by reasonable inferences from the record. Although the record is not entirely clear about the procedures the trial court used to review the jury's questions, the trial court's written response to the jury clearly states that the response was made after giving all counsel and parties the opportunity to be heard. The reasonable inference from this statement is that Burdette participated in the decision, regardless of where the

22

discussion occurred. A reviewing court should not assume facts outside the record, especially facts which contradict reasonable inferences from facts contained in the record.

Here, we cannot review Burdette's "right to be present" challenge, without assuming facts outside the record. Thus, a PRP, not a direct appeal, is the appropriate mechanism for Burdette to seek review of any right to be present claim. *McFarland*, 127 Wn.2d at 335.

I would not have addressed the merits of the above issues due to the inadequate record. Because the record clearly establishes that the initial discussion regarding jury instructions occurred in a closed session in chambers, I concur without reservation in the majority's decision regarding Burdette's public trial right as it relates to the initial discussion of jury instructions. I also concur without reservation in the majority's decisions regarding Burdette's suppression of evidence and ineffective assistance of counsel claims.

QUINN-BRINTNALL, J.