FILED
COURT OF APPEALS
DIVISION II

2015 JUN 30 AM 8: 32

STATE OF WASHINGTON
BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45944-2-II |
| Respondent, | |
| v. | |
| RICHARD R. SCOTT, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — Richard Scott pleaded guilty in 2001 to one count of third degree

rape. Scott later moved to vacate his guilty plea based on witness recantations, which motion the

superior court denied. We reversed the superior court's order denying Scott's motion to vacate

his guilty plea and remanded to the superior court to conduct an evidentiary hearing. Pursuant to

our remand orders in *State v. Scott*, 150 Wn. App. 281, 207 P.3d 495 (2009) and *State v. Scott*,

noted at 170 Wn. App. 1002 (2012) (unpublished), the superior court conducted an evidentiary

hearing to determine (1) the credibility of witness recantations and (2) whether those recantations

justified granting Scott's CrR 7.8(b)(2) motion to vacate his guilty plea conviction of third

degree child rape. Following the evidentiary hearing, the superior court found that the witness

recantations were not credible, and it denied Scott's motion to vacate his guilty plea conviction.

Scott appeals, arguing that the superior court erred by denying his CrR 7.8 motion. Scott has

also filed a statement of additional grounds (SAG) for review, but his SAG does not argue any basis for reversing the superior court's order. Because substantial evidence supports the superior court's findings on remand that the victim and witness recantations were not credible, we affirm.

## FACTS

In 2001, Scott entered an *Alford*[1] plea to one count of third degree child rape. In 2006, Scott moved to vacate his conviction based on newly discovered evidence in the form of witness recantations. The superior court denied Scott's 2006 motion to vacate without conducting an evidentiary hearing, concluding that Scott's motion was time-barred. On appeal, we held that the superior court erred in concluding that Scott's motion was time-barred because the recantation by the victim, DH,[2] constituted newly discovered evidence under RCW 10.73.100(1) and, if true, DH's recantation met the criteria to vacate Scott's conviction and grant him a new trial.[3] We, thus, remanded to the superior court with the following directions:

> We . . . remand to the superior court to hold an evidentiary hearing to determine whether [Scott's] new evidence is credible. If the superior court determines that the new evidence is credible, then the court shall reconsider Scott's motion to withdraw his *Alford* plea. If the superior court determines that the new evidence is not credible, then Scott's *Alford*-plea based conviction stands.

*Scott*, 150 Wn. App. at 299-300; Clerk's Papers (CP) at 61-62.

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] To protect the juvenile's victim's privacy, we use the juvenile victim's initials and the initials of witnesses sharing a last name with the victim. *See* General Order 2011-1 of Division II, *In re The Use of Initials of Pseudonyms or Child Witnesses in Sex Crime Cases* (Wash. Ct. App.).

[3] We noted, however, that post-conviction statements by witness Connie DuFour, alone, would not meet the criteria for granting Scott a new trial because those statements did not recant her earlier statements and, thus, were merely impeaching.

No. 45944-2-II

After we issued our opinion in *Scott*, 150 Wn. App. 281, Scott moved to withdraw his motion to vacate his conviction. The superior court granted Scott's motion and struck the evidentiary hearing. Scott filed a new motion to vacate his conviction, which motion the superior court denied because the new motion alleged the same grounds as his previous motion to vacate his conviction. We reversed the superior court, holding that CrR 7.8(b) and RCW 10.73.140[4] did not bar the superior court's consideration of Scott's new motion to vacate because his previous motion had not been decided on its merits. And we again remanded to the superior court to "hold an evidentiary hearing to determine the weight and credibility of Scott's new evidence to determine whether to grant Scott's motion to vacate his conviction based on newly discovered evidence." CP at 80.

On remand, counsel for Scott told the superior court that he could not locate witnesses to testify at the evidentiary hearing, and he requested that the superior court rule on Scott's motion based on documentary evidence, including the witnesses' written statements and transcribed interviews. The State agreed that the superior court could rule on Scott's motion based on documentary evidence.

---

[4] RCW 10.73.140 is applicable to a trial court's consideration of a CrR 7.8(b) motion and provides in relevant part:

> Upon receipt of a personal restraint petition, the court of appeals shall review the petition and determine whether the person has previously filed a petition or petitions and if so, compare them. If upon review, the court of appeals finds that the petitioner has previously raised the same grounds for review, or that the petitioner has failed to show good cause why the ground was not raised earlier, the court of appeals shall dismiss the petition. . . .

3

At the November 20, 2013 evidentiary hearing, Scott presented declarations from DH, DH's acquaintance, Ralph Landeros, and DH's brothers, SH, MH, and DKH. Scott also presented a 2001 police report regarding his arrest, a 2001 statement from Dufour, and a 2007 transcribed interview of Dufour. The State also presented several documents at the evidentiary hearing, including a 2006 declaration by DH, transcripts from a 2006 and a 2007 interview of DH, and a 2001 presentence report of Scott.

Scott testified by telephone at the evidentiary hearing. Scott testified that DH had rented a room in the attic of his home in 2001. Scott admitted that he had sexual contact with DH on two occasions, but he stated that the first sexual contact with DH had occurred sometime between April 15, 2001 and April 20, 2001, after DH had reached the age of consent. Scott stated that the second sexual contact with DH occurred at the beginning of May 2001 and that DuFour witnessed this contact after walking into his room.

Following the evidentiary hearing, the superior court entered a memorandum decision on February 11, 2014 finding that Scott's newly discovered evidence was not credible and denying his motion to vacate his conviction. On April 4, 2014, the superior court entered written findings of fact and conclusions of law that state in relevant part:

**FINDINGS OF FACT**

[9]. The defendant argued that he did not commit the crime of Rape of a Child in the Third Degree because he had sexual relations with [DH] after [DH] turned age 16. Therefore, according to the defendant, no crime occurred. The defendant asserted that the statements made by [DH] in 2001, 2006, and 2007, were inconsistent and patently unreliable. In 2001, [DH] told a Child Protective Service (CPS) worker and the Long Beach Police that he had sexual relations with Mr. Scott on an ongoing basis during 2000 and the first part of 2001, i.e., while he was still age 15. [DH] also indicated that he was coerced into having sex with Mr. Scott. In 2006, [DH] stated that he was never forced to have sex with Mr. Scott, that nothing happened between him and Mr. Scott,

4

and that Mr. Scott never made any sexual moves toward him. Likewise, in 2007 [DH] asserted that he did not have a sexual relationship with Mr. Scott. While the later statements of [DH] are not consistent with the information that he relayed to the CPS worker and the Long Beach Police in 2001, these later statements also are not consistent with the statements made by Mr. Scott. In particular, Mr. Scott admitted to a Community Corrections Officer in 2001 that he engaged in sexual relations with [DH]. Mr. Scott also admitted in a disposition [sic] in 2005 to having sex with [DH].

The court finds that the later statements of [DH] are not credible because they do not contain the level of detail that is present in the statements that he provided to the CPS worker and the Long Beach Police in 2001. Moreover, [DH's] later statements do not assert that he told falsehoods in 2001. On the contrary, [DH] essentially claims that the police did not accurately record his statements. Due to the passage of time, the Court finds that the statements [DH] made to the CPS worker and the Long Beach Police in 2001 are credible, whereas the later statements are not believable. This factual assessment is buttressed by the fact the CPS worker and Long Beach Police had no reason to make up allegations or falsify their reports. The later statements of [DH] also are suspect and not credible because they do not comport with the assertions of Mr. Scott that he had sexual relations with [DH].

10. The gravamen of this reference hearing thus turns on whether the assertion of Mr. Scott is credible, the sexual relations that occurred between Mr. Scott and [DH] took place after [DH] turned age 16 on April 16, 2001. Besides his own testimony at the reference hearing which supported this assertion, Mr. Scott pointed to the declarations of [SH], [MH], [DKH], and Ralph Landeros in arguing that [DH] was not on the Long Beach Peninsula during the time period listed in the information, viz., February and March of 2001. A close inspection of those declarations shows that they only assert that [DH] returned to the Long Beach Peninsula around the time he turned age 16. They do not specifically indicate where [DH] was residing during the months of February and March 2001. Further, the statement by Ralph Landeros which indicated that he did not see Mr. Scott act in a sexually inappropriate manner is not helpful. Mr. Landeros was not in a position to observe Mr. Scott at all times.

More importantly, all of these declarations, which were written years after the events in question, are inherently unreliable. These declarations do not contain sufficient "background" information to make them credible. Specifically, the Court has no way to assess the reliability of these statements, since the Court has little information about the declarants, and the declarants were not subject to cross examination. In short, stating something in a declaration does not in itself make the declaration credible. Moreover, the contention of Mr. Scott is inconsistent with the statements provided to the police by [DH], Connie

Dufour, and Johan Fernlund in 2001. The initial statements of these witnesses confirm that Mr. Scott had sexual relations with [DH] when he was age 15. While Ms. Dufour changed her statement in 2007, there is no reason to believe that a statement provided approximately six years after the event in question is more trustworthy than the original statement. Since the memory of individuals tends to fade over time, Ms. Dufour's statement should be given little credence. Similarly, while the 2001 statement of Johan Fernlund is not dispositive, it constitutes one more piece of evidence that the sexual relationship between Mr. Scott and [DH] had been going on for a good deal of time.

11. Taking all the evidence together, the defense has not presented sufficient factual predicates to override the information that has previously been gathered by the State. The defendant's post-conviction evidence is not credible by any evidentiary standard.

. . . .

## CONCLUSIONS OF LAW

[4]. Based on the Findings of Fact listed above, Mr. Scott definitely has not met his burden of proof.

5. Therefore, Mr. Scott's motion to vacate his conviction should be denied.

CP at 317-25.

## ANALYSIS

Scott argues that the superior court erred by denying his CrR 7.8(b)(2) motion to vacate his guilty plea conviction of third degree child rape. We disagree and affirm the superior court's order denying Scott's motion to vacate his conviction.

### I. STANDARD OF REVIEW

As an initial matter, the parties disagree about the appropriate standard for reviewing the superior court's findings of fact. In general, our review of a superior court's "findings of fact is limited to determining whether they are supported by substantial evidence, and, if so, whether the findings support the conclusions of law and judgment." *State v. Macon*, 128 Wn.2d 784,

799, 911 P.2d 1004 (1996). In contrast, our review of legal issues is de novo. *Macon*, 128 Wn.2d at 799. And we review a trial court's denial of a CrR 7.8 motion to vacate a conviction for an abuse of discretion. *Scott*, 150 Wn. App. at 290 (citing *State v. Ieng*, 87 Wn. App. 873, 877, 942 P.2d 1091 (1997)). A trial court abuses its discretion when its decision is based on untenable grounds or reasons. *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004).

Scott acknowledges that we generally review a trial court's factual findings for substantial evidence in the record, but argues that we should review the findings de novo here because the superior court considered documentary evidence in finding that the recanting witnesses' statements were not credible. We disagree.

In support of his argument that we should review the superior court's factual findings de novo, Scott cites to *Smith v. Skagit County*, 75 Wn.2d 715, 453 P.2d 832 (1969). There our Supreme Court stated:

> [W]here the record both at trial and on appeal consists *entirely* of written . . . material . . . and the trial court has not seen nor heard testimony requiring it to assess the credibility or competency of witnesses . . . then on appeal a court of review stands in the same position as the trial court in looking at the facts of the case and should review the record de novo.

*Smith*, 75 Wn.2d at 718 (emphasis added). But *Smith* is distinguishable because here, unlike in *Smith*, the superior court did not rely solely on documentary evidence in making its credibility determination. Instead, the superior court also relied on Scott's telephonic testimony in finding DH's recantation testimony not credible, stating in finding of fact 9, "The later statements of [DH] also are suspect and not credible because they do not comport with the assertions of Mr. Scott that he had sexual relations with [DH]." CP at 322. The superior court properly relied on Scott's admissions of sexual contact with DH in finding DH's recantation not credible. *See*

7

*Macon*, 128 Wn.2d at 802 (in assessing whether a witness's recantation is reliable, a trial court may consider the totality of circumstances surrounding the case). Because the superior court was in the best position to evaluate the credibility of Scott's testimony, we defer to its credibility findings and will not overturn those findings unless they lack substantial supporting evidence in the record. Accordingly, we reject Scott's argument that we should review the superior court's factual findings de novo.

## II. SUBSTANTIAL EVIDENCE SUPPORTS THE SUPERIOR COURT'S FINDINGS OF FACT

Scott assigns error to the superior court's findings of fact 3, 5, 9, 10, and 11, asserting that record lacks substantial evidence to support those findings. We disagree.

A. *Findings of Fact Numbers 3 and 5*

We decline to address Scott's contentions with findings of fact 3 and 5[5] because Scott admits that those findings were not material to the superior court's ruling on his CrR 7.8 motion.

---

[5] Finding of fact 3 states:

> Since 2009, the court has appointed five different lawyers to represent Mr. Scott in Superior Court. After the last directive from the Court of Appeals in 2012, the timing of the reference hearing has been delayed because Mr. Scott has been unhappy with his court-appointed counsel and has sought to discharge them. Also, Mr. Scott's latest defense counsel experienced difficulty in locating purported key witnesses.

Finding of fact 5 states:

> Mr. Scott, through his attorney, David Arcuri, indicated to the Court that he wanted the reference hearing to occur based solely on existing written materials. At the hearing on November 20, 2013, the defense stated that it was not seeking to introduce any live testimony other than the testimony of Mr. Scott. The State agreed to allow documentary materials to be admitted into evidence even though these materials could be excluded under the Rules of Evidence. The State agreed to allow Mr. Scott to introduce documentary materials into evidence at the reference

No. 45944-2-II

Therefore, even assuming that the record lacks substantial evidence to support findings of fact 3 and 5, there is no effective relief we can provide Scott from the erroneous entry of those findings. Accordingly, Scott's contentions with findings of fact 3 and 5 are moot, and we do not address them further. *See, e.g., State v. Burdette*, 178 Wn. App. 183, 203, 313 P.3d 1235 (2013) (An issue is moot if court cannot provide effective relief.).

B.    *Finding of Fact Number 9*

Scott contends that substantial evidence does not support the following portions of the superior court's finding of fact 9: (1) that DH's recantations are not credible because "they do not contain the level of detail that is present in the statements that he provided to the CPS worker and the Long Beach Police in 2001"; and (2) that DH's recantations are not credible because "the CPS worker and the Long Beach Police had no reason to make up allegations or falsify their reports" in 2001. CP at 321-22. But even assuming that substantial evidence does not support these portions of the superior court's finding of fact 9, these portions of the finding state only two of the three reasons for the superior court's ultimate finding that DH's recantations were not credible.[6] The superior court also found DH's recantations were not credible because the

_____

hearing, because the State did not want to further delay the reference hearing which had been placed on hold for far too long. The Court finds that the State was not responsible for the delay is [sic] scheduling the reference hearing.

CP at 317-18.

[6] Moreover, in reviewing the record, we have determined that substantial evidence supports all three of the trial court's reasons for finding DH's recantations not credible. We need not discuss the evidence supporting the trial court's first two reasons for finding DH's recantations not credible, as Scott's admissions contradicting DH's recantations independently provide substantial support for the trial court's credibility finding.

9

recantations denied any sexual contact by Scott and, thus, contradicted Scott's admissions that he had engaged in sexual contact with DH. Accordingly, even if substantial evidence did not support two of the superior court's three stated reasons for finding that DH's recantations were not credible, substantial evidence in the record clearly supports the finding that DH's recantations were not credible based on the DH's denial of sexual contact with Scott, which denials were contrary to Scott's own admissions at the evidentiary hearing.

C.    *Finding of Fact Number 10*

Scott also contends that substantial evidence does not support the portions of finding of fact 10 finding that (1) SH, MH, and DKH's 2010 declarations "do not specifically indicate where [DH] was residing during the months of February and March 2001," which months constituted the relevant charging period; and (2) the declarations lacked sufficient information from which the superior court could ascertain the declarations' credibility.[7] CP at 322. Again, we disagree.

Regarding DH's location during the charging period of February 1, 2001 to March 31, 2001, SH's declaration merely stated that he was incarcerated at a juvenile facility during the first two or three days of April, 2001 and that he "clearly remember[ed] at that point in time [his] older brother [DH] was residing in Ontario, Oregon" with a relative. CP at 98. And MH and DKH's declarations similarly state that MH and DKH were each living in Long Beach,

---

[7] Although Scott does not appear to challenge the portion of finding of fact 10 that "[DH] turned age 16 on April 16, 2001," we note that substantial evidence does not support it. CP at 322. DH's birth certificate, which was included in the superior court's record, shows that he turned 16 on April 12, 2001, not April 16, 2001. However, because the superior court's error in finding DH turned 16 on April 16, 2001, rather than on April 12, 2001, did not affect its conclusion that Scott had failed to prove the newly discovered evidence would likely change the result of the trial, we need not address this error further.

Washington during the first two or three days of April, 2001 and that each "clearly remember[ed] at that point in time [their] brother [DH] was residing in Ontario, Oregon" with a relative. CP at 100, 103. But none of these declarations state where DH was specifically residing during the charging period of February 1, 2001 to March 31, 2001. Accordingly, substantial evidence in the record supports the superior court's finding that the declarations "do not specifically indicate where [DH] was residing during the months of February and March 2001." CP at 322.

Additionally, the declarations plainly lack sufficient information from which any trier of fact could ascertain their credibility. None of the declarations, which were made over 9 years after the charging period, provided a basis for the declarants' personal knowledge that DH was residing in Ontario, Oregon around the beginning of April 2001. Accordingly, substantial evidence in the record supports the superior court's finding that it could not ascertain the credibility of these declarations.

D.     *Finding of Fact Number 11*

Finally, Scott contends that substantial evidence does not support the portion of finding of fact 11 finding that his "post-conviction evidence is not credible by any evidentiary standard." CP at 323. Specifically, Scott contends that substantial evidence does not support this finding based on the lack of substantial evidence in support of findings of fact 9 and 10. Based on our determination above that substantial evidence in the record supports findings of fact 9 and 10, we reject this contention and hold that substantial evidence supports the finding that Scott's post-conviction evidence was not credible.

III. THE SUPERIOR COURT PROPERLY DENIED SCOTT'S CrR 7.8 MOTION

To be entitled to a new trial based on newly discovered evidence, Scott had to prove by a preponderance that his newly discovered evidence: "(1) will probably change the result of the trial; (2) was discovered after the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching." *Macon*, 128 Wn.2d at 800. "A new trial may be denied if any one of these factors is absent." *Macon*, 128 Wn.2d at 800. Additionally, where the newly discovered evidence in support of CrR 7.8 motion is based on witness recantations, the superior court must make an initial finding regarding the recantations' credibility. *Macon*, 128 Wn.2d at 801-802. If the trial court finds the witness recantations are not credible, it does not have a basis to grant a new trial because it "is not likely the recantation[s] would have changed the outcome of the trial." *Macon*, 128 Wn.2d at 803. Because substantial evidence supports the superior court's findings that the witness recantations were not credible, it properly denied Scott's CrR 7.8 motion to vacate his conviction.

III. SAG

To warrant judicial consideration, a SAG need not contain citations to the record or to legal authority, but the SAG must "inform the court of the nature and occurrence of alleged errors." RAP 10.10(c). Scott's SAG consists entirely of factual assertions and does not explain how those assertions, if true, demonstrate that the superior court erred in denying his CrR 7.8

motion.[8] Accordingly, we do not further address his SAG. Accordingly, we affirm the superior

court's denial of Scott's motion to vacate his conviction.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Maxa, J.

_____
Lee, J.

---

[8] For example, Scott's SAG asserts: "[DH] was not interviewed by the PSI man. That is fact raised at the July sentencing hearing," and "[t]he first person to get a recorded statement and sworn declaration by [DH] was Scott's legal investigator Alwin Farr May 11th 2006," but Scott does not explain how these factual assertions relate to the trial court's denial of his motion to vacate his guilty plea. SAG at 3.